OPINION
{¶ 1} Plaintiffs Karen and John B. McDevitt appeal a judgment of the Court of Common Pleas of Tuscarawas County, Ohio, entered on a jury verdict rendered after trial. Appellants' personal injury action alleged both appellants were injured because of the negligence of appellee Charles Wenger, and appellants' insurance company, appellee Allstate, breached its insurance contract with appellants by failing to pay medical bills incurred because of the accident under the "Med Pay" provision of appellants' auto insurance policy. Appellee Wenger admitted liability for the accident, but the jury found his negligence did not directly and proximately cause any injury or damage to either plaintiff, and rendered a verdict of zero dollars. Appellants assign four errors to the trial court:
 {¶ 2} "The Trial Court Erred To The Prejudice Of The Plaintiffs-Appellants In Failing To Allow Dr. Roe To Provide His Opinion Testimony At Trial.
 {¶ 3} "The Verdict Rendered By The Jury And The Judgment Entered By The Court Was Wholly Contrary To And Not Sustained By The Manifest Weight Of The Evidence.
 {¶ 4} "The Trial Court Erred To The Prejudice Of The Plaintiffs In Failing To Give The Jury A `thin Skull' Or Eggshell Plaintiff' Theory Jury Instruction And More Expanded Jury Instruction On Damages.
 {¶ 5} "The Trial Court Erred To The Prejudice Of The Plaintiffs And Prevented Plaintiffs From Receiving A Fair Trial By Limiting The Time Allotted To Plaintiffs For Closing Argument To Thirty Minutes, When The Defendants Were Given An Hour For Closing Argument".
 {¶ 6} The record indicates on September 18, 1999, appellee Wenger negligently ran his Ford Explorer into the back end of appellants' 1999 Chevy pickup truck, which was stopped in traffic waiting to make a left turn. Appellants' pickup truck was new. Appellants alleged the pickup truck was severely damaged, with the bed floor bowed up several inches in the center, the sides buckled, the rear bumper bent under the truck, the frame of the truck bent, and the bed was actually pushed into the cab, where the passenger's seat track in the passenger compartment was bent. Appellees contested the extent of the damage to the vehicle. Appellant John McDevitt alleged he sustained a neck sprain or strain "whiplash" injury, headaches, and bruising from his seat belt. Appellant John McDevitt began treatment with Dr. Richard Roe on September 20, the first day Dr. Roe's office was open following the collision. Dr. Roe testified he treated John for the injuries received from the collision with chiropractic care until December 7, 1999. Dr. Roe testified the necessary and reasonable cost of his services was $556.
 {¶ 7} Appellant Karen McDevitt alleged she sustained numerous injuries as a direct and proximate result of the collision, including damage to her right shoulder, right hand, right leg, right toes, right side of the neck with head pain, anxiety, low back pain radiating down her hip, knee, and toes. Appellant alleged she suffered from numbness in her right foot and shortness of breath. The emergency medical squad treated her at the scene of the collision, and transported her to the Union Hospital emergency room. The ER doctors diagnosed her as having a sustained cervical and lumbar strain in the collision.
 {¶ 8} Appellant Karen McDevitt had a pre-existing back condition, and she alleged she became permanently disabled after the collision. Dr. Roe treated appellant Karen McDevitt, and testified his chiropractic care charges were $4,047. Appellant Karen McDevitt alleged she incurred a total of $11,186.87 in medical expenses.
 {¶ 9} Appellants claimed lost income from appellant Karen McDevitt's real estate business, and appellants' home remodeling business, in the amount of $59,464.17.
 {¶ 10} Appellee Wenger testified he was traveling at a very low speed when he rear-ended appellants' truck. He was not injured, nor were the passengers in his vehicle, his two children. At trial, appellees argued appellant John McDevitt did not report any injury complaints at the scene of the accident, and the emergency room notes indicated appellant Karen McDevitt had no complaints of lower back pain. Both appellants had prior treatment histories with Dr. Roe.
 {¶ 11} Appellees also contested the lost income from the home repair business, because appellants' other family members had also worked in their home repair business. Appellant John McDevitt also conceded he had been able to work on his own home in spite of his inability to earn a living as a home repairman.
 I {¶ 12} In their first assignment of error, appellants argue the trial court erroneously sustained appellees' objections to Dr. Roe's opinion testimony at trial. Appellants argue at the beginning of Dr. Roe's trial deposition, appellants' counsel informed Dr. Roe he would ask the doctor for his opinions. Counsel asked the doctor to please provide his opinions based upon his background, knowledge, education, treatment of Karen and John, and observations of Karen and John. Counsel also asked Dr. Roe to only give opinions to a reasonable degree of chiropractic probability and certainty. The doctor agreed to inform counsel if he were giving an opinion that did meet both of those criteria.
 {¶ 13} Appellees' counsel objected to certain opinion testimonies, but did not state the basis for the objection. Appellants urge us the most likely reason was because the "magic words" did not immediately precede the question.
 {¶ 14} The specific portions of the deposition which the court struck are as follows:
 {¶ 15} Regarding Karen McDevitt's symptoms, the doctor found they were consistent with the mechanism of injury she alleged, and it was with reasonable chiropractic certainty that they were a direct result of the injury. The injury to which Dr. Roe was referring was the rear-end collision.
 {¶ 16} Dr. Roe testified Karen McDevitt had suffered a ruptured lumbar disc, caused by the accident, and there was no record she had any lumbar disc injury prior to the accident.
 {¶ 17} Dr. Roe testified John McDevitt's injuries were consistent with the mechanism of injury alleged by the patient, namely, the auto accident, which caused a hyperflexion/extension injury. Dr. Roe testified the cause of the hyperflexion/extension injury was the rear-ended impact on September 18, 1999.
 {¶ 18} Dr. Roe testified regarding his treatment of Karen McDevitt, stating he had seen her in October of 2001, for the injury she had sustained in the September 18, 1999 collision, and Dr. Roe testified she had suffered a permanent injury. Dr. Roe testified Karen McDevitt's neck and lower back ruptured discs had never been resolved, in spite of her visit to several physicians, a neurosurgeon, orthopedic surgeon, and her family physician.
 {¶ 19} Appellees advance two arguments in response. First, appellees argue there was sufficient detailed testimony of Dr. Roe's medical opinion presented to the jury. Appellees assert their objections were not based upon the form of the question, or the absence of "magic words". Appellees argue Dr. Roe's opinions of causation were not specifically responsive to the questions appellants' counsel asked.
 {¶ 20} A trial court has broad discretion in determining whether evidence should be admitted or excluded, Krischbaum v. Dillon (1991),58 Ohio St.3d 58. This court may not reverse a trial court's exercise of discretion unless we find the trial court abused it discretion, to the material prejudice of the party. The Supreme Court has frequently defined the term abuse of discretion as implying the court's attitude is unreasonable, arbitrary, or unconscionable, see, e.g., Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 21} The dispute between appellants and appellees regarding why the trial court may have sustained the various objections, highlights the reason why general objections are disfavored. If counsel does not state the grounds for the objection, it makes the task of the trial court and any reviewing court much more difficult.
 {¶ 22} The trial court entered a judgment on the objections on August 2, 2002. Regrettably, only a few of the court's rulings give us any information regarding why the court sustained the motions. The trial court found certain of Dr. Roe's responses to be non-responsive, and our review of the transcript leads us to conclude there is no abuse of discretion regarding those rulings. Likewise, the court sustained an objection to counsel's remarks Dr. Roe's explanation was "helpful" in another portion of the transcript, and there is no error there. Finally, the court sustained several objections in part, striking certain portions of statements. Our review of the record leads us to conclude the court was correct in finding the answers went beyond the question asked, and were for this reason, non-responsive.
 {¶ 23} However, there are some five objections which the court sustained without comment. These include Dr. Roe's testimony, Karen McDevitt's ruptured lumbar disc was caused by the accident, because there was no evidence of any ruptured disc prior to the accident; and Dr. Roe's opinion the cause of the sprain or strain suffered by appellant John McDevitt corresponded with the mechanism of injury he alleged. The court also sustained without comment Dr. Roe's opinion appellant John McDevitt's cervical sprain/strain, a hyperflexion/extension injury, was caused by their rear-end collision.
 {¶ 24} Our review of the transcript of proceedings leads us to conclude the answers Dr. Roe gave were responsive to the questions, which elicited his expert opinion regarding the proximate cause.
 {¶ 25} Appellees urge it is not reversible error for multiple non-responsive opinions to be restricted or limited, and points us to the testimony of Dr. Jose Martinez, who also testified regarding proximate cause.
 {¶ 26} Although the within represents a difficult issue, we find on the whole the trial court erred in sustaining the following objections: the objection found at page 31, line 24; page 32, line 3; page 41, line 7; page 41, line 12; page 41, line 23; and page 48, line 25, all regarding the proximate cause of appellants' injuries.
 {¶ 27} The assignment of error is sustained.
 II {¶ 28} In their second assignment of error, appellants argue the jury's verdict is not supported by the manifest weight of the evidence.
 {¶ 29} Because we find in I, supra, the trial court erred in excluding certain evidence, we find a review of the manifest weight of the evidence to be premature. On remand, the evidence presented will be different.
 {¶ 30} The second assignment of error is overruled as premature.
 III {¶ 31} In their third assignment of error, appellants argue the trial court should have instructed the jury regarding the "thin skull" or "eggshell plaintiff" theory, and should have given more expanded jury instructions on damages.
 {¶ 32} Appellants correctly assert the trial court should give a requested jury instruction if it is a correct statement of the law applicable to the facts in the case, and if reasonable minds could reach the conclusion sought by the instruction, see, e.g.,Murphy v. Carrolton Manufacturing (1991), 61 Ohio St.3d 585.
 {¶ 33} As stated supra, appellants presented evidence Karen McDevitt had pre-existing degenerative disc disease, which she alleged made her more susceptible to injury.
 {¶ 34} Appellants requested the court give an instruction to the jury that a defendant who negligently inflicts injury on another takes the injured party as he finds her, which means it is not a defense that some other person of greater strength, constitution, or emotional makeup might have been less injured, or differently injured, or quicker to recover.
 {¶ 35} We find the above statement to be an accurate statement of Ohio law, and one which conforms to the evidence appellants presented. Accordingly, we find it was error for the trial court not to give the requested instruction.
 {¶ 36} Appellants also requested an expanded jury instruction regarding damages. Specifically, appellants requested the court explain the plaintiffs were claiming impairment of their physical capacity to enjoy certain aspects of life, and this action was distinguishable from damages for bodily pain and mental suffering.
 {¶ 37} We have reviewed the court's instructions to the jury regarding damages, and we find the trial court did instruct the jury regarding damages for inability to perform the usual activities of life, or to perform the usual specific activities which may have given the appellants pleasure.
 {¶ 38} We find the jury instruction as given was sufficient to instruct the jury regarding the kinds of damages it should consider. We find the trial court did not err in declining to expand on that instruction.
 {¶ 39} The third assignment of error is sustained in part and reversed in part.
 IV {¶ 40} In their fourth assignment of error, appellants argue the trial court erred in limiting their closing argument to thirty minutes, while appellees were given an hour for closing arguments. The record contains a discussion with counsel, in which the court pointed out the jury spent four days receiving testimony, and advised counsel to concisely present their arguments without excessive verbage.
 {¶ 41} Appellants concede a trial court's limitation in closing arguments should not be reversed absent an abuse of discretion, see Pangv. Minch (1990), 53 Ohio St.3d 186.
 {¶ 42} Appellants argue counsel had not exhausted his arguments against both defendants, and should have been allotted the same amount of time as appellees. Each of the two appellees was given thirty minutes as well, and appellants argue they had to present their case against both in the same amount of time.
 {¶ 43} We have reviewed the record, and we cannot say the trial court abused its discretion in limiting closing arguments as it did.
 {¶ 44} The fourth assignment of error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is reversed, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.
By Gwin, P.J., Hoffman, J., and Edwards, J., concur