OPINION
{¶ 1} Defendant, Thomas Mathewson, appeals from the final judgment and decree of the domestic relations court terminating his marriage to Plaintiff, Stephanie Mathewson.
 {¶ 2} Stephanie and Thomas[1]1were married on May 25, 1996 Their son, Robert, was born on January 13, 1997. Stephanie and Thomas separated on September 5, 2003, and Stephanie commenced an action for divorce on September 23, 2003. The trial court issued temporary orders on November 24, 2003 that designated Stephanie the temporary residential parent and legal custodian of Robert, granted Thomas visitation and parenting time, ordered Thomas to pay child support in the sum of $362.00 per month, and appointed a guardian ad litem ("GAL") for Robert. The trial court subsequently ordered a psychological evaluation of the parties by Dr. John Layh.
 {¶ 3} The final hearing commenced on September 16, 2004. Thomas, who is an attorney, appeared pro se. Due to inappropriate behavior by Thomas during the hearing, the trial court called a recess and contacted the Ohio Lawyer's Assistance Program ("OLAP") to refer Thomas for a drug and alcohol assessment and intervention. On November 18, 2004, the trial court noted that Thomas had yet to take the necessary steps to obtain a drug and alcohol assessment. The trial court suspended Thomas's visitation and parenting time with Robert and gave Thomas another opportunity to obtain a drug and alcohol assessment.
 {¶ 4} The final hearing reconvened on January 31, 2005. During this second day of testimony, Thomas made an oral motion that the trial court recuse itself. The trial court denied the motion. The evidentiary hearing concluded on February 1, 2005, and the trial court issued its Judgment Entry and Decree of Divorce on March 1, 2005. Thomas filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN GRANTING DIVORCE, DECISION IS CONTRARY TO EVIDENCE AND LAW COURT WAS ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE."
 {¶ 6} R.C. 3105.01 sets forth the grounds on which the trial court may grant a divorce: ". . . (D) Extreme cruelty . . . (F) Any gross neglect of duty . . . (J) On the application of either party, when husband and wife have, without interruption for one year, lived separate and apart without cohabitation; (K) Incompatibility, unless denied by either party."
 {¶ 7} Stephanie alleged extreme cruelty, gross neglect of duty, and incompatibility as grounds for divorce pursuant to R.C. 3105.01. Thomas denied incompatibility, and so R.C. 3105.01(K) is unavailable as a ground for divorce. The trial court granted Stephanie a divorce on findings of extreme cruelty and gross neglect of duty.
 {¶ 8} Thomas argues that the trial court erred in granting Stephanie a divorce because the evidence does not establish that Thomas engaged in gross neglect of duty or extreme cruelty. We agree with Thomas that the evidence of extreme cruelty or gross neglect of duty is less than compelling. But we need not make a determination of whether the trial court's findings on this issue are supported by the record, because it is undisputed that Stephanie is entitled to a divorce under R.C.3105.01(J).
 {¶ 9} Civ. R. 15(B) provides, in part, that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues."
 {¶ 10} Stephanie did not move to amend her pleading. However, both parties testified that Stephanie had left the marital residence in September 2003. The trial court granted the divorce decree on March 1, 2005. Because the parties lived separate and apart without interruption and without cohabitation for a period in excess of one year, there were sufficient grounds for divorce pursuant to R.C. 3105.01(J). Galloway v.Khan, Franklin App. No. 06AP-140, 2006-Ohio-6637, _72-75.
 {¶ 11} Thomas' first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 12} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT GRANTING APPELLEE SOLE CUSTODY OF MINOR CHILD DECISION WAS CONTRARY TO EVIDENCE AND LAW ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE."
EIGHTH ASSIGNMENT OF ERROR
 {¶ 13} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT REGARDING PARENTING TIME COURT'S DECISION CONTRARY TO EVIDENCE AND LAW ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE."
 {¶ 14} The second and eighth assignments of error are interrelated and will be addressed together. Thomas argues that the trial court's decision to grant Stephanie sole custody of Robert was not in the child's best interest. In particular, Thomas argues that the trial court did not consider the factors in R.C. 3109.04(F)(1)(a), (b), (c), (e), and (f). We do not agree.
 {¶ 15} R.C. 3109.04(F)(1) provides in relevant part: "In determining the best interest of a child pursuant to this section, whether on an original decree of allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction with and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; . . . (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;. . . ."
 {¶ 16} The trial court considered the factors set forth in R.C.3109.04(F)(1)(a)-(j), and found that Stephanie was better suited to provide for Robert's day-to-day care. The trial court set out a number of reasons for its finding. First, Thomas' living quarters were constantly "under construction," and the primary source of heat there was a wood burning fireplace that produced smoke sufficient to cause the trial court to note that Thomas "reeked of smoke" during the evidentiary hearing. The trial court found that it was not in Robert's best interest to be subjected to such smoke or resulting odor for even a short duration.
 {¶ 17} Second, the testimony at the final hearing, along with Thomas' outbursts and aggressive behavior during the hearing, led the trial court to find that Thomas' past dependency problems had resurfaced in the form of prescription medicine and alcohol abuse. The trial court explained that Thomas exhibited "bizarre" behavior during the three days of testimony, including at one point calling Stephanie's attorney an "ignorant son of a bitch."
 {¶ 18} Third, both Dr. Layh and the GAL recommended that Stephanie be designated Robert's legal custodian. Dr. Layh also recommended that Thomas continue treatment with another physician to address issues relating to parenting, anger, and his continued use of alcohol and drugs. The trial court noted that Thomas chose to ignore Dr. Layh's advice by stopping his treatment with this other physician.
 {¶ 19} Fourth, the trial court found that Robert's demeanor had significantly changed for the better after the trial court suspended Robert's visitations with Thomas. The trial court concluded that "Robert has a far greater opportunity to have positive interaction and interrelationships with friends and relative while residing with his mother, all of which will be beneficial to his future development."
 {¶ 20} The trial court considered all of the factors in R.C.3109.04(F)(1), and the findings the court made are supported by competent, credible evidence in the record. Thomas' disagreements with the trial court's findings mostly involve disagreements with the trial court's credibility determinations. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. Upon this record, we find that the trial court did not abuse its discretion in awarding custody of Robert to Stephanie.
 {¶ 21} Thomas argues that the trial court abused its discretion in denying him visitation with Robert. Thomas concedes that the trial court has broad discretion in matters of visitation. However, according to Thomas the trial court failed to consider the reports prepared by Dr. Layh and the GAL. We do not agree.
 {¶ 22} The trial court discussed at length the reports of Dr. Layh and the GAL and relied on both reports in making its findings regarding custody and visitation. The trial court also noted that because Dr. Layh and the GAL had prepared their reports prior to the final hearing, they were unable to address the unacceptable behavior that Thomas exhibited at that hearing. Based on the trial court's observation of Thomas and the testimony at the hearing, the trial court found that Thomas was a danger to Robert, at least until Thomas takes the necessary steps to obtain help to control his rage and dependency problems. The trial court has left open the possibility of Thomas's regaining visitation with Robert if Thomas takes the necessary steps to obtain counseling. The trial court's findings are supported by the record.
 {¶ 23} Upon this record, we cannot find that the trial court abused its discretion in denying Thomas visitation rights. Thomas' second and eighth assignments of error are overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 24} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY VIOLATING THE APPELLANT'S RIGHT TO DUE PROCESS."
 {¶ 25} Thomas argues that the trial court violated his right to due process by setting a time limit on the length of trial, denying his right to present uninterrupted testimony in the form of narration, denying him proper notice that the three hours on January 31, 2005 would be the entire balance of the trial, and having contact with OLAP. We do not agree.
 {¶ 26} Trial courts are given great deference in controlling their dockets, and therefore, a reviewing court uses an abuse of discretion standard when reviewing a trial court's requirements in this area.State v. Unger (1981), 67 Ohio St.2d 65, 67. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 (citations omitted).
 {¶ 27} Evid. R. 611(A) provides that the trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . (2) avoid needless consumption of time. . . ." Further, a trial court has the discretion to limit questioning of witnesses if the "probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403(B). Time limitations on evidence have been upheld where a party has not identified what additional evidence the party would have offered or how that evidence could have changed the court's judgment. Readnower v. Readnower, Greene App. No. 2004 CA 100,162 Ohio App.3d 347, 2005-Ohio-3661, _11 (citation omitted). Indeed, "[i]t is basic to appellate practice that error, in the form of excluded testimony, is not reviewable unless there has been a proffer of the excluded testimony or the content of such testimony is apparent from the circumstances." Balliet v. Horan (July 27, 1998), Ashland App. No. 97 COA 01204; Evid. R. 103.
 {¶ 28} Thomas was given great leeway by the trial court to ask questions of the witnesses. A party, though, does not have the right to present infinite testimony. Our review of the transcript from the three days of the final divorce hearing shows that the trial court was patient with Thomas when he used a large portion of his time asking irrelevant or redundant questions of Stephanie. On several occasions during this questioning, the trial court reminded Thomas of the limitations on the length of the trial. These reminders should have been helpful in guiding Thomas to better organize his time and questioning. Instead, Thomas ignored the reminders and used the available time to cover irrelevant or repetitive subject matter. The trial court did not err in limiting the length of trial.
 {¶ 29} Thomas also argues that the trial court denied him his right to present uninterrupted testimony in the form of narration. Thomas' argument is not supported by the record. The trial court did allow Thomas to testify in narrative form. The trial court occasionally asked questions of Thomas to clarify his testimony. Trial judges are specifically allowed under Evid. R. 614(B) to interrogate witnesses, "as long as the questions are relevant and do not suggest a bias for one side or the other." Weiner v. Kwiat, Montgomery App. No. 19289, 2003-Ohio-3409, _97 (citation omitted). The trial court's impartiality is presumed, absent proof of bias, prejudice, or prodding of the witness to elicit partisan testimony. Id. Our review of the record does not reveal that the trial court exhibited bias against either party when asking questions.
 {¶ 30} Thomas also contends that he was denied proper notice that January 31, 2005 would be the final day of the divorce hearing. We do not agree. January 31, 2005 was neither the only day of the hearing nor the last day of the hearing. Rather, the hearing took place over three separate days: September 16, 2004, January 31, 2005, and February 1, 2005. Over four months had passed between the first and second days of the evidentiary hearing, giving Thomas ample notice that witnesses needed to be subpoenaed. Thomas concedes that he was aware of the January 31, 2005 hearing date but failed to call witnesses because he assumed that the hearing would not conclude on that day. Thomas' erroneous assumption is not a sufficient reason to reverse on appeal.
 {¶ 31} Finally, Thomas argues that the trial court's telephone call to a representative of OLAP regarding Thomas' unsuccessful visit to OLAP was improper without Thomas' voluntary release of that information.
 {¶ 32} Based on Thomas's inappropriate behavior at the evidentiary hearing, the trial court ordered Thomas, an attorney, to undergo an assessment with OLAP. Apparently, the phone call between the trial court and the representative of OLAP concerned whether Thomas had complied with the trial court's order for Thomas to undergo a drug and alcohol assessment. Once it received the phone call from OLAP, the trial court scheduled a conference with the attorneys for both parties to discuss the phone call. The record does not reflect that either party objected to or raised any concerns at this conference with the trial court regarding the trial court's phone call with OLAP. We do not find any error in the way the trial court handled this situation.
 {¶ 33} Thomas' third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 34} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT SHOULD NOT HAVE TAKEN CASE; FAILED TO RECUSE HIMSELF; VIOLATED DEFENDANT'S PRIVACY RIGHTS AS FINDER OF FACT."
 {¶ 35} Thomas argues that the trial court should have recused itself from hearing his case because Thomas had practiced before the trial court and the trial court's contact with OLAP created a conflict of interest.
 {¶ 36} R.C. 2701.03 sets forth the procedures for seeking disqualification of a common pleas court judge for prejudice. Under that section, a party may file an affidavit of disqualification with the clerk of the supreme court. The Chief Justice of the Supreme Court of Ohio, or his designee, then must determine whether the judge is biased or prejudiced. Beer v. Griffith (1978), 54 Ohio St.2d 440, 441-42; Section 5(C), Article IV, Ohio Constitution. R.C. 2701.03 provides "the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced." Jones v. Billingham (1995),105 Ohio App.3d 8, 11, 663 N.E.2d 657. Therefore, we do not have the authority to grant the relief Thomas requests.
 {¶ 37} Thomas' fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 38} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY OVERRULING APPELLANT'S MOTION OBJECTING TO THE SPECIFIC APPOINTMENT OF THE GUARDIAN AD LITEM AND USE OF CLARK COUNTY VISITATION ORDER: DE FACTO CHANGE OF VENUE."
 {¶ 39} Thomas argues that the trial court erred by appointing a GAL from Clark County instead of Greene County and by using the Clark County Standard Order of Visitation rather than Greene County's Standard Order of Visitation. According to Thomas, the trial court's use of a Clark County GAL and the Clark County Standard Order of Visitation was a defacto change of venue and further evidence of the court being arbitrary, unreasonable, and unconscionable.
 {¶ 40} A trial court judge from Clark County was assigned to the case as a visiting judge by order of the Chief Justice of the Supreme Court. The trial court considered the differences between the two standard orders of visitation from the two counties and found it was in the best interest of the child to use the Clark County Standard Order. Further, the trial court ultimately found that visitation with Thomas is not in the best interest of Robert at this time. Therefore, Thomas's argument regarding the use of the Clark County Standard Order of Visitation is moot.
 {¶ 41} The trial court had prior experience with the GAL 16 the court appointed and found that the GAL had no problem traveling to Greene County to meet with and interview all of the relevant witnesses suggested by the parties. Despite this, Thomas speculates that a GAL who resides in Greene County has different views of marriage and different social values than a GAL who resides in Clark County.
 {¶ 42} Thomas points to no evidence in the record that supports his contention and does not identify any prejudice he suffered as a result of the alleged and unidentified difference in social views between GALs living in neighboring counties. Without a showing of prejudice, Thomas' argument fails. App. R. 12.
 {¶ 43} Thomas' fifth assignment of error is overruled.
SIXTH ASSIGNMENT OF ERROR
 {¶ 44} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN DIVISION OF ASSETS/LIABILITIES COURT'S DECISION CONTRARY TO EVIDENCE AND LAW WAS ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE."
 {¶ 45} Thomas raises three arguments in this assignment of error. First, Thomas argues that the trial court abused its discretion in failing to order Stephanie to deliver Thomas' property to his new residence. It is undisputed that Stephanie readily made Thomas' property available for pickup by him. We are aware of no authority that imposed an affirmative duty on Stephanie to deliver all of Thomas' property to his new address.
 {¶ 46} Second, Thomas argues that the trial court abused its discretion when it awarded the parties' dog to Stephanie. According to Thomas, the dog should have been awarded to him because it is a farm dog and Thomas lives on a farm.
 {¶ 47} On the first day of the divorce hearing, the GAL testified that Robert has grown close to the dog. Also, Stephanie testified that the dog was purchased as a surprise for Robert. Thomas fails to explain how taking the dog away from Robert is in anyone's best interest. On this record, we cannot find that the trial court abused its discretion in ordering that Stephanie and Robert have the dog.
 {¶ 48} Third, Thomas argues that the trial court erred in the division of liabilities by assigning Thomas the entire deficiency balance on the mortgage of the house. At the final hearing, Thomas requested that he be awarded the marital residence, subject to the condition that he refinance the property and pay off the outstanding property taxes. The trial court gave Thomas sixty days from the date of the entry of the divorce decree to refinance the mortgage. If Thomas is unable to facilitate a refinance within the sixty days, the residence must be listed for sale at auction. If the proceeds from the auction do not cover the outstanding obligation on the first mortgage and other expenses, then Thomas is responsible for the deficiency balance.
 {¶ 49} On this record, we are unable to determine whether there was in fact a deficiency balance, because any auction would have occurred after the notice of appeal was filed. Further, we cannot determine why the trial court assigned the entire deficiency balance to Thomas rather than assign one-half of the deficiency balance to each party. The trial court has discretion under R.C. 3105.171(C)(1) to make an equitable division rather than an equal division. But the trial court must explain why it believed it was equitable to assign the entire deficiency balance to Thomas rather than assign one-half of the balance to each party. The debt was owed on marital property, and in allocating property the court "must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law." Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, Syllabus by the Court.
 {¶ 50} Absent the necessary explanation, we must reverse this portion of the trial court's judgment and remand the cause to the trial court. Upon remand, the trial court should determine the threshold issue of whether there is in fact a deficiency balance. If there is a deficiency balance, then the trial court should consider what amount of the deficiency balance each party should be required to pay, and unless it is divided equally, how the court arrived at the unequal division. If Thomas was instead successful in refinancing the loan on the property, and no auction sale took place, no further proceedings are required by our remand.
 {¶ 51} Thomas' sixth seventh assignment of error is sustained in part and overruled in part.
SEVENTH ASSIGNMENT OF ERROR
 {¶ 52} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT REGARDING FEDERAL INCOME TAX COURT'S DECISION CONTRARY TO EVIDENCE AND LAW, ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE."
 {¶ 53} Thomas argues that the trial court abused its discretion when it allowed Stephanie to file individual federal income tax returns for the years of the marriage during which no returns were filed. According to Thomas, the trial court's ruling condones possible tax fraud.
 {¶ 54} We disagree with Thomas's interpretation of the trial court's decision. The trial court ordered that "each of the parties hereto shall be free to file their own individual. tax returns for all past and present years in the manner they individually deem appropriate." The court did not order the parties to file individual tax returns. Instead, the trial court left it up to each party to file in the manner he or she chooses.
 {¶ 55} Federal tax law determines the proper way in which n individual should file a federal tax return. It is the filer's option to determine whether to file singly or jointly. The trial court cannot control how that right is exercised.
 {¶ 56} The seventh assignment of error is overruled.
NINTH ASSIGNMENT OF ERROR
 {¶ 57} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT REGARDING CHILD SUPPORT OBLIGATION COURT'S DECISION IS ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE."
 {¶ 58} Thomas argues that the trial court abused its discretion by failing to take into account the change of circumstances in his income caused by the loss of his law license.
 {¶ 59} In its November 24, 2003 Entry, the trial court ordered Thomas to pay child support in the amount of $362.00 per month, based on Thomas' annual gross income of $33,913 from his law practice and teaching position in the preceding year. In the divorce decree, the trial court found that Thomas's law license had been suspended and that "Mr. Mathewson's income has changed, to an extent, however, that change is as a direct result of his own misdoings and accordingly this Court finds that Mr. Mathewson is voluntarily underemployed." The trial court then found that it was appropriate to impute $30,000.00 of gross annual income to Thomas, which resulted in a child support amount that mirrored the amount originally set in the trial court's November 24, 2003 Entry.
 {¶ 60} In computing child support in accordance with the provisions of R.C. 3119.02, a trial court must determine the annual income of each of the child's parents. Rock v. Cabral (1993), 67 Ohio St.3d 108, 110,616 N.E.2d 218. R.C. 3119.01(C)(5) provides that: "'Income' means either of the following: (a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.
 {¶ 61} "'Potential income' means . . . for a parent who the court . . . determines is voluntarily unemployed or voluntarily underemployed: (a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria: (i) The parent's prior employment experience; (ii) The parent's education; (iii) The parent's physical and mental disabilities, if any; (iv) The availability of employment in the geographic area in which the parent resides; (v) The prevailing wage and salary levels in the geographic area in which the parent resides; (vi) The parent's special skills and training; (vii) Whether there is evidence that the parent has the ability to earn the imputed income; (viii) The age and special needs of the child for whom child support is being calculated under this section; (ix) The parent's increased earning capacity because of experience; (x) Any other relevant factor." R.C. 3119.01(C)(11).
 {¶ 62} When it imputed $30,000 of gross annual income to Thomas, the trial court did not reference any of the factors listed in R.C.3119.01(C)(11). Rather, the trial court apparently presumed that Thomas could earn as much without a law license as he had earned through the use of his law license. We believe such a presumption is inappropriate, in view of the unique and specialized nature of law practice and necessity of a license to engage in the practice. Rather, the trial court should consider all of the relevant factors in R.C. 3119.01(C)(11) to determine what amount of potential income, if any, should be imputed to Thomas in light of his status as a part-time teacher who is currently not licensed to practice law, as well as any other income he actually has available to him.
 {¶ 63} Thomas' ninth assignment of error is sustained. The judgment of the trial court will be reversed in part and affirmed in part. The cause is remanded for further proceedings consistent with this opinion.
BROGAN, J. and FAIN, J., concur.
[1] For clarity and convenience, the parties are identified by their first names.