OPINION
{¶ 1} In this post-divorce controversy, defendant-appellant, Laurie L. Mangan, appeals the Greene County Domestic Relations Court's judgment in favor of plaintiff-appellee, Timothy R. Mangan. In February of 2006, the trial court granted Tim's[1] request *Page 2 
for a divorce from Laurie. They agreed to care for their three minor children under the aegis of a court-approved shared parenting plan. By the end of the year, however, both parties had filed motions seeking sole custody. After a hearing on the motions, the trial court dissolved the shared-parenting agreement, granted Tim's motion and awarded Laurie parenting time. Additionally, the court ordered Laurie to begin making child support payments. Laurie appealed.
 {¶ 2} Laurie asserts that the trial court erred in several respects. She argues that it abused its discretion by imposing time limits on the hearing and by refusing to order psychological evaluations of the children. Further, by failing to conduct an in-chambers interview with each child as she requested, the court violated R.C. 3109.04(B), which requires such an interview upon request. Also, she argues that the decision to grant Tim's motion is against the manifest weight of the evidence and is based on incomplete and insufficient evidence. Finally, with respect to the court's determination of her child support obligations, Laurie argues that its calculation of her gross income is unsupported by the evidence. We agree that R.C. 3109.04(B) required the trial court to interview the children as she requested. We also agree that its gross income calculation is unsupported by the evidence. We do not find any other reversible errors. Consequently, the trial court's judgment is affirmed in part and reversed in part, and this cause is remanded for further proceedings.
 {¶ 3} The important facts are these. After the divorce, Tim and Laurie cared for their minor children-Abbie, Bailie, and Griffin-pursuant to a shared parenting plan in which they agreed to share custody and parenting rights and responsibilities. Sadly, less than a *Page 3 
month later, the battle over their children began anew, and in November Laurie filed a motion for sole custody and child support. The following month, Tim filed a similar motion seeking similar relief.
 {¶ 4} In January of 2007, in its pretrial order, the trial court informed the parties that on one day in early May it would give them each half of the court's time to present evidence. In the interim, the trial court appointed a guardian ad litem for the children; it granted Laurie's request that it interview the children in chambers, stating that it would do so on the day of the hearing; but it denied her request for a psychological evaluation of the children.
 {¶ 5} Twice continued, the hearing was finally held on August 31, 2007. Because the trial court was otherwise occupied, the hearing began two hours late. Laurie objected to the late start and, for the first time, to the limited hearing time but to no avail. Tim and Laurie themselves testified, presented the testimony of witnesses, and cross-examined each other's witnesses during a four-hour-and-ten-minute hearing, each using half of the time, as the pretrial order instructed. Because time was short, the trial court stated that it would reschedule the in-chambers interviews with the children. At the end of the day, the trial court interrupted Laurie's cross examination of Tim and declared the hearing at an end. As a concession, the trial judge offered the parties a three-hour block of time the following week in which to continue. Because of previous engagements, the offered time was not accepted by the parties. The court did not make another offer. On November 2, 2007, the trial court entered judgment terminating the shared-parenting agreement, designating Tim the sole residential parent, awarding Laurie parenting time, and ordering her to pay child support. Laurie appealed, assigning five errors to the judgment and *Page 4 
proceedings. We address each assignment of error, though not in the order presented to us.
 {¶ 6} Initially, however, we address the standards of review that we must apply to the trial court's decision. Many decisions of a domestic relations court are discretionary. To the extent a decision is within the sound discretion of the trial court, we look only for abuse of that discretion. See Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028, 1030. This means that to find error, we must find not merely an error of judgment or law, but rather a decision that is "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, 1142. Often, statutory directives or mandatory requirements are placed upon domestic relations judges to guide the exercise of their discretion. The question then is whether the trial court correctly decided a question of law; it has no discretion in such matters. See Wolfinger v. Ock (1991),72 Ohio App.3d 193, 196, 594 N.E.2d 139. A failure to perform a mandatory duty is an error of law reversible on appeal. See Marker v. Grimm (1992),65 Ohio St.3d 139, 143, 601 N.E.2d 496. With these standards in mind, we turn to the contentions.
 {¶ 7} "THE UNREASONABLE TRIAL TIME LIMITATIONS IMPOSED BY THE TRIAL COURT WERE WHOLLY INSUFFICIENT, WERE ABUSIVE OF DISCRETION, PREVENTED THE APPELLANT FROM HAVING HER CAUSE FULLY AND COMPLETELY ADJUDICATED AND RESULTED IN A DENIAL OF HER PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS."
 {¶ 8} In her first assignment of error, Laurie asserts that allowing her only two hours to present evidence was an abuse of the trial court's discretion. Whether this is an abuse of discretion is not the focus of our discussion. Instead, assuming, arguendo, it was, *Page 5 
we ask whether prejudice resulted from the court's imposition of a time limit. After doing so, we answer in the negative. Consequently, any putative error is not reversible.
 {¶ 9} The General Assembly has seen fit to limit our power to reverse a trial court's decision. Our limited power permits us to reverse a lower court's decision only upon a finding of "prejudicial error committed by such lower court." R.C. 2501.02. Where the harm is not immediately apparent, the appellant must explain how the result would have materially differed were it not for the intervening error. Prejudice is not presumed. Holm v. Smilowitz (1992), 83 Ohio App.3d 757,772, 615 N.E.2d 1047. Commenting on this precept in situations similar to those here, we have observed that "where the Appellant has not asserted what additional evidence they would have offered or how it would have changed the court's judgment," "time limitations on evidence have been upheld." See Mathewson v. Mathewson, Greene App. No. 05-CA-035, 2007-Ohio-574, at ¶ 27. Further, when the additional evidence is testimony, we have stated that "[i]t is basic to appellate practice that [this] error . . . is not reviewable unless there has been a proffer of the excluded testimony or the content of such testimony is apparent from the circumstances." Id. (citation omitted); Evid.R. 103.
 {¶ 10} Laurie did not proffer, or ask to proffer, her witnesses' excluded testimony nor is the content of their testimony apparent. She does not dispute that she did not proffer, but she does assert that the circumstances-docket entries, transcript, and reports-give a "definitive and apparent clue" to the content of the excluded testimony. She does not, however, describe the content that she asserts is apparent, other than to suggest that it is favorable to her case. Besides, even if the content were apparent, she does not say how the additional testimony might have materially altered the trial judge's judgment. This *Page 6 
argument must fail.
 {¶ 11} Recognizing that her lack of proffer severely undermines her assertion in this assignment of error, Laurie offers an ameliorative argument. She had no opportunity to proffer testimony, she argues, because the trial judge did not offer to stay late nor did he offer to make the court's digital recording system available. This argument is easily countered: Laurie could have made her proffer "in written form via an entry filed with the trial court." Balliett v. Horan (July 27, 1998), Ashland App. No. 97 COA 01204, 1998 WL 429843, at *4. See also,Joyce-Couch v. DeSilva (1991), 77 Ohio App.3d 278, 292, 602 N.E.2d 286
(trial judge allowing submission of written proffers of the excluded testimony of witnesses) and Lee v. Celebrezze (Oct. 10, 1985), Franklin App. No. 85AP-529, 1985 WL 10463, at *3 (trial court permitting proffer of expert's rebuttal testimony by written submission). Because a proffer was not made, we are unable to determine whether Laurie suffered any prejudice from the trial court's alleged error.
 {¶ 12} Before we turn to the next assigned error, we point out that Laurie knew, or should have known, months before the hearing of the limited time that she had to present her case. Yet, despite learning this from pre-trial order early on, she did not object until the day of the hearing. Moreover, knowing that she would have limited time to present her case, Laurie still planned to call twelve witnesses to testify-and not to testify briefly. According to her, it would have taken at least a full day just to conduct a direct examination of her excluded witnesses.[2] From this, we can infer that the direct examination of all twelve witnesses plus her cross examination of Tim's witnesses would have consumed far more *Page 7 
time than she was allotted. She could not have presented her case "completely and fully" even if the hearing had started on time, for she would have gained but an hour.[3] Laurie implicitly accepted the time constraints yet failed to plan accordingly.
 {¶ 13} Laurie's first assignment of error is overruled.
 {¶ 14} "THE TRIAL COURT'S FAILURE TO ORDER A FULL AND COMPLETE PSYCHOLOGICAL CUSTODY EVALUATION OF THE PARTIES AND THE PARTIES' CHILDREN CONSTITUTED AN ABUSE OF DISCRETION AND REVERSIBLE ERROR."
 {¶ 15} In her fourth assignment of error, Laurie asserts that the trial court abused its discretion by refusing her request to order psychological evaluations of the parties and their children. We disagree.
 {¶ 16} As we noted above, a trial court's discretion is often guided by statute. Such is the case here, with R.C. 3109.04(C) teaching that, "[p]rior to trial, the court . . . may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations." Rather than being a mandatory requirement, plainly, the "granting of a psychological evaluation lies in the trial court's sound discretion." Ward v. Ward, Stark App. No. 2005-CA-00118, 2006-Ohio-851, at ¶ 4.
 {¶ 17} The written decision denying Laurie's request reflects the trial court's reasoning. It states that the trial court found no compelling reason existed to order psychological evaluations of the children. Indeed, it was the court's judgment that the potential harm of such an order outweighed any possible benefit. Significantly, the court *Page 8 
pointed out that the children's guardian ad litem, appointed to be an advocate for the children, upon concluding her investigation, did not recommend psychological evaluations. In addition, our review of the record reveals ample evidence available to the court concerning the psychological state of the parties and their children. Therefore, we are satisfied that the trial court did not abuse its discretion by refusing to order psychological evaluations of the Mangan children. The trial judge's decision had a valid basis and cannot be called arbitrary, unreasonable, or unconscionable.
 {¶ 18} Laurie's fourth assignment of error is overruled.
 {¶ 19} "THE TRIAL COURT'S FAILURE TO INTERVIEW THE PARTIES' MINOR CHILDREN IN CHAMBERS, AS AUTHORIZED AND MANDATED BY O.R.C. 3109.04(B), CONSTITUTED AN ABUSE OF DISCRETION AND REVERSIBLE ERROR."
 {¶ 20} In her third assignment of error, Laurie contends that the trial judge erred by failing to conduct an in-chambers interview of the children, as she requested. We agree. On this question, the trial court had no discretion but was subject to a clear statutory directive.
 {¶ 21} R.C. 3109.04(B)(1) contains the directive. Though discretionary absent a request, upon a request by either party, duty replaces discretion and the court is instructed that it "shall interview in chambers any or all of the involved children regarding their wishes and concerns." Chapman v. Chapman, Montgomery App. No. 21652,2007-Ohio-2968, at ¶ 11. Even where the record reflects a very careful and conscientious judge weighing the evidence, the plain language of this statute is unequivocal in its mandate. Badgett v. *Page 9 Badgett (1997), 120 Ohio App.3d 448, 452, 698 N.E.2d 84.
 {¶ 22} The situation here is somewhat peculiar. The trial judge did not expressly refuse to interview the children; just the opposite, it expressly agreed to do so at the hearing. Time, however, was short on the day of the hearing, and the trial judge said that he would reschedule the interviews. Evidently, this was not done and Laurie did not subsequently ask the court to do so. This failure on Laurie's part does give us pause to question whether she was materially harmed by this error. But, upon careful consideration, we think that possible harm is apparent.
 {¶ 23} Despite all the evidence in the record showing the manifest preference that the children have for their mother, the interviews should be conducted. The record also contains testimony of inappropriate attempts by Laurie to influence the children, of her attempts to alienate them from Tim, of their different behavior when not with her. A further reason, the purpose of these interviews goes beyond simply ascertaining the living preferences of the children. Even if no latent living preferences are forthcoming in the privacy of the judge's chambers, the trial judge will have the opportunity to talk with the Mangan children about their relationships with Laurie and Tim. The court's inquiry, for example, may include questions such as, "Tell me the things you like, and then tell me the things you don't like about your mom/dad?" We cannot say that the knowledge gleaned from these interviews could not have a material effect on the trial judge's decision.
 {¶ 24} Other districts that have confronted this issue have refused to reverse because they found that the appellant failed to show any prejudice suffered from the court's refusal to interview the children. See In re D.M., Summit App. Nos. 22732, 22749, *Page 10 2005-Ohio-6740 and In Matter of Reid (July 10, 1998), Paulding App. No. 11-98-3. With due respect to our sister courts, we are somewhat puzzled by this conclusion. How could an appellant ever show prejudice when the content of the in-chamber colloquy is entirely unknown? Indeed, we think that this is precisely the raison d'etre of this statutory directive. The trial judge has the opportunity to probe for unknown, but potentially significant, information that would help ensure that any decisions were in the best interest of the child.
 {¶ 25} We sustain Laurie's third assignment of error and remand with instructions directing the trial judge to separately interview Abbie, Ballie, and Griffin in accordance with R.C. 3904.01(B).
 {¶ 26} "THE TRIAL COURT'S JUDGMENTS TERMINATING THE PRIOR SHARED PARENTING DECREE, DESIGNATING THE APPELLEE AS THE CHILDREN'S RESIDENTIAL PARENT AND LIMITING AND RESTRICTING THE APPELLANT'S PARENTING TIME WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE WERE BASED ON INCOMPLETE AND INSUFFICIENT EVIDENCE, WERE OTHERWISE ABUSIVE OF DISCRETION, CONTRARY TO LAW AND CONSTITUTED REVERSIBLE ERROR."
 {¶ 27} In her fifth assignment of error, Laurie challenges the evidentiary basis of the custody decision. We will not take up the challenge at this time. Because we find that the trial judge should have interviewed the children and considered what they had to say, we find that a review of the evidence is premature. In re D.J., Montgomery App. No. 21666, *Page 11 2006-Ohio-6304. All the evidence is not yet in. See McDevitt v.Wenger, Tuscarawas App. No. 2002-AP-090071, 2003-Ohio-6096.
 {¶ 28} The fifth assignment of error is overruled.
 {¶ 29} "THE TRIAL COURT'S CHILD SUPPORT COMPUTATIONS WERE ERRONEOUS, WERE NOT BASED ON COMPETENT AND CREDIBLE EVIDENCE, WERE NOT SUPPORTED BY THE RECORD AND, IN THAT RESPECT, CONSTITUTED REVERSIBLE ERROR."
 {¶ 30} Laurie asserts in her second assignment of error that the trial court incorrectly calculated her gross income, on which is based her support obligations.[4] We are convinced by her arguments.
 {¶ 31} We suspect that the trial court simply made a mistake. In calculating her gross income, it found that she earned $18,824 per year-$10,400 from employment at a retail store plus $8,424 as a student respiratory therapist. The record supports the latter amount but not the former. Despite her uncontroverted testimony that she ceased her employment at the retail store in 2005, the trial court inexplicably found her employment there current.
 {¶ 32} Tim does not deny these facts but contends that a trial court is permitted to impute potential income to a parent who is voluntarily underemployed. He points to her testimony stating that she will be earning around $39,000 per year upon graduating as a *Page 12 
respiratory therapist in October of 2007. He argues that the court could have imputed a portion of this potential income to her gross income. We agree that a court may impute potential income, but it must clearly state how much potential income it is imputing and its reasons for doing so. See Rock v. Cabral (1993), 67 Ohio St.3d 108, 113, 616 N.E.2d 218. Nothing in the record before us, however, so much as hints that the trial court imputed, or intended to, income to Laurie. We find that the trial court's inclusion of the phantom income is arbitrary and unreasonable, having no valid evidentiary basis .
 {¶ 33} Relatedly, we observe that, as intimated above, Laurie should have graduated as a respiratory therapist by now. If she has, we expect that her income has changed since the date of the hearing. Accordingly, on remand, the trial court should consider her present income when it determines her child support obligations.
 {¶ 34} The second assignment of error is sustained.
 {¶ 35} The judgment of the trial court is affirmed in part and reversed in part and remanded to the trial court for further proceedings consistent with this opinion.
FAIN, J., and DONOVAN, J., concur.
Copies mailed to:
David S. Peterson
Anthony J. Zaharieff
Laurie Mangan
Hon. Steven L. Hurley
[1] Because of the common surname, we will use the parties' first names throughout this opinion.
[2] She states in her brief that it would have taken at least a day just to proffer their testimony.
[3] The hearing started approximately two hours late of which half was her time.
[4] She brought the error to the trial court's attention via a motion for relief from judgment. The trial court deferred judgment on the motion pending the outcome of this appeal. *Page 1