[Cite as *A.L.D. v. L.N.S.*, 2022-Ohio-959.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| [A.L.D.] | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-49 |
| | : | |
| v. | : | Trial Court Case Nos. 2020-JUV-146 |
| | : | |
| [L.N.S.] and [R.D.] | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations Division, Juvenile |
| Defendants-Appellants | : | Section) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2022.

. . . . . . . . . . .

GREGORY K. LIND, Atty. Reg. No. 0055227, 20 South Limestone Street, Suite 340, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee, A.L.D.

CHRISTOPHER A. DEAL, Atty. Reg. No. 0078510, 61B South Main Street, Centerville, Ohio 45458
        Attorney for Defendant-Appellant, R.D.

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, R.D. (Father), appeals from a judgment of the Clark County Court of Common Pleas, Domestic Relations Division, Juvenile Section, ordering him to pay child support to plaintiff-appellee, A.L.D. ("Amanda"). For the reasons outlined below, the portion of the judgment ordering Father to pay child support will be vacated. The award of legal custody to Amanda will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On June 12, 2020, Amanda filed a complaint for legal custody of her 16-year-old step-daughter, M.D. Amanda filed the complaint after M.D. disclosed that her biological father, Father, had forced her to perform oral sex on him when she was 14 years old. M.D. also disclosed that Father had sent and searched for sexually explicit videos on her cell phone. After Amanda and M.D. reported Father to the Springfield Police Department, Father was charged with single counts of rape, sexual battery, and disseminating matter harmful to juveniles. *See* Clark C.P. No. 2020-CR-323. Father pled guilty to the rape count, a first-degree felony, and on November 17, 2020, the trial court sentenced Father to seven years in prison.

{¶ 3} Seven months after Father's conviction, Amanda, who at the time had temporary legal custody of M.D., filed a motion requesting child support. On August 23, 2021, the trial court held a hearing on Amanda's motion for child support and on her complaint for legal custody. Despite being properly served with process and receiving notice of the hearing date, neither Father nor M.D.'s biological mother appeared at the hearing.

{¶ 4} During the hearing, Amanda testified that she and Father had been married for 15 years until they divorced in 2016. Amanda testified, however, that she and Father had reconciled after their divorce and then continued living together without remarrying. Amanda testified that during their relationship, she was a stay-at-home mother who cared for M.D. and her two biological children with Father. Amanda also testified that when she and M.D. reported Father's sexual abuse to law enforcement, Father emptied all of their bank accounts and evicted her and the children from their home, which was titled solely in Father's name after the divorce.

{¶ 5} Amanda claimed that she had been unable to support M.D. and her two other children by herself until she recently obtained employment at Path Integrated Health ("Path") in Springfield, Ohio. Amanda testified that she had been working at Path for one month and made approximately $36,000 a year. Amanda also testified that she had government insurance and paid out of pocket for M.D. to receive counseling services.

{¶ 6} Amanda testified regarding M.D.'s biological mother as well. Amanda informed the trial court that M.D.'s biological mother had always lived out of state and had had very little contact with M.D. over the last several years. Amanda also informed the trial court that M.D.'s biological mother had a boyfriend who had raped M.D. when M.D. was eight years old. Amanda testified that she had obtained an emergency protection order against M.D.'s biological mother, which the biological mother recently broke while trying to contact M.D. on Facebook.

{¶ 7} Amanda explained that even though Father was M.D.'s parental custodian, she had been M.D.'s primary caregiver ever since M.D. was five years old. Amanda testified that before he was incarcerated, Father worked out of town for two weeks every

month, leaving her to care for M.D. and their two other children most of the time. Amanda also testified that Father had earned $18,000 a month working as a manager on an oil rig in Pennsylvania prior to his incarceration.

{¶ 8} Following the hearing, the trial court granted Amanda legal custody of M.D. The trial court also ordered Father to pay child support based on the $18,000 monthly income testified to by Amanda. The trial court specifically indicated that it was ordering Father to pay child support as if he were still making $18,000 a month, i.e., $216,000 a year. In reaching that decision, the trial court found that it was not appropriate or in M.D.'s best interest to consider Father's income to be $0 as a result of his felony conviction and incarceration. Accordingly, the trial court imputed $216,000 of annual income to Father and used that figure, along with Amanda's $36,000 income, to calculate Father's child support obligation. Based on those figures, the trial court ordered Father to pay $1,442.57 a month in child support and $27.76 a month in cash medical support. The trial court also ordered Father to pay 20% of the accumulated arrearages existing as of June 20, 2021, plus a two percent administrative fee.

{¶ 9} Father now appeals from the child support order, raising a single assignment of error for review.

## Assignment of Error

{¶ 10} Under his sole assignment of error, Father claims that the trial court erred by imputing $216,000 of annual income to him for purposes of calculating his child support obligation. We note that Father is not challenging the trial court's legal custody determination, but only the award of child support.

{¶ 11} When computing child support, a trial court must determine the annual income of each of the child's parents. *Rock v. Cabral*, 67 Ohio St.3d 108, 110, 616 N.E.2d 218 (1993). The term "income," as used in child support cases, means either of the following: "(a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(9). "Gross income" is generally defined as "the total of all earned and unearned income from all sources during a calendar year[.]" R.C. 3119.01(C)(12). "Potential income," means both of the following for a parent who the court determines is voluntarily unemployed or underemployed:

(a) Imputed income that the court * * * determines the parent would have earned if fully employed * * *[;]

(b) Imputed income from any nonincome-producing assets of a parent[.]

R.C. 3119.01(C)(17)(a) and (b).

{¶ 12} "To impute income, courts are required to follow a two-step process." *Larkin v. Larkin*, 2d Dist. Greene Nos. 2015-CA-07, 2015-CA-21, 2016-Ohio-1563, ¶ 20, citing *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 44. " 'First, there must be a finding that a parent is voluntarily unemployed or underemployed before income can be imputed.' " *Id.*, quoting *Feldmiller* at ¶ 44. "Once the court decides that a parent is voluntarily unemployed or underemployed, R.C. 3119.01(C)(17)(a)(i)-(xi) sets out various factors to be considered in calculating the amount to be imputed." *Page v. Page*, 2d Dist. Clark No. 2021-CA-47, 2022-Ohio-411,

¶ 39; *Larkin* at ¶ 20, citing former R.C. 3119.01(C)(11)(a);[1] *Matlock v. Matlock*, 2d Dist. Montgomery No. 28278, 2019-Ohio-2131, ¶ 19. The factors under R.C. 3119.01(C)(17)(a) are as follows:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

R.C. 3119.01(C)(17)(a).

{¶ 13} "Whether a parent is voluntarily unemployed or underemployed and the amount of 'potential income' to be imputed to a child support obligor are determinations

---

[1] Effective March 28, 2019, R.C. 3119.01(C)(11)(a) was amended and renumbered as R.C. 3119.01(C)(17)(a), without substantive change. *See* Sub. H.B. 366, 2018 Ohio Laws File 76.

within the trial court's discretion that will be upheld absent an abuse of discretion." *Apps v. Apps*, 10th Dist. Franklin Nos. 02AP-1072, 03AP-242, 2003-Ohio-7154, ¶ 46, citing *Rock,* 67 Ohio St.3d 108, 616 N.E.2d 218, at syllabus. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34; *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 14} In this case, the trial court did not explicitly find whether Father was voluntarily unemployed or underemployed. However, such a failure does not by itself constitute an abuse of discretion. A majority of Ohio appellate courts have held that an explicit finding by the trial court on whether a parent is voluntarily unemployed or underemployed is not required so long as such a finding can be inferred from the record. *See, e.g., Ayers v. Ayers*, 6th Dist. Wood No. WD-21-010, 2022-Ohio-403, ¶ 25; *Bruns v. Green*, 10th Dist. Franklin No. 18AP-259, 2019-Ohio-2296, ¶ 27-29; *Corwin v. Corwin*, 12th Dist. Warren Nos. CA2013-01-005, CA2013-02-012, 2013-Ohio-3996, ¶ 76; *Drummer v. Drummer*, 3d Dist. Putnam No. 12-11-10, 2012-Ohio-3064, ¶ 27; *Thaher v. Hamed*, 10th Dist. Franklin No. 09AP-970, 2010-Ohio-5257, ¶ 7; *O'Connor v. O'Connor*, 184 Ohio App.3d 538, 2009-Ohio-5436, 921 N.E.2d 700, ¶ 11 (3d Dist.2009); *Snyder v. Snyder*, 5th Dist. Stark No. 2008 CA 00219, 2009-Ohio-5292, ¶ 36-37; *Winkelman v. Winkelman*, 11th Dist. Geauga No. 2008-G-2834, 2008-Ohio-6557, ¶ 22. *But see Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087, ¶ 36 (holding that an explicit finding of voluntary unemployment/underemployment is required).

{¶ 15} In this case, it can be inferred from the record that the trial court found that

Father was voluntarily unemployed as a result of his incarceration. This inference can be made by virtue of the following statement that the trial court made at the August 23, 2021 hearing:

> The Court finds that, specifically that the Defendant's incarceration does not serve as an adequate defense and justifies an imputation of his income as if he were still working. To that end, the Court finds that it is not appropriate, nor is it in the child's best interest to consider his income as zero just because he committed a crime actually a very heinous crime against the minor child in this case which resulted in his incarceration. The Court will not let him use that as a basis for which to pay no support. So we will impute income to him as, which is consistent with that which he was making prior to his incarceration of $216,000 a year, whatever that calculates out to.

Hearing Tr., p. 18. *See also* Journal Entry (Aug. 26, 2021), p. 2, ¶ 3(b).

**{¶ 16}** It appears from the foregoing statement that when deciding to impute income to Father, the trial court applied former R.C. 3119.05(I)(5), which provided:

> Unless it would be unjust or inappropriate and therefore not in the best interests of the child, a court or agency shall not determine a parent to be voluntarily unemployed or underemployed and shall not impute income to that parent if any of the following conditions exist:

> * * *

> (5) The parent is incarcerated or institutionalized for a period of twelve months or more with no other available assets, *unless the parent is*

*incarcerated for an offense relating to the abuse or neglect of a child who is the subject of the support order or an offense under Title XXIX of the Revised Code when against the obligee or a child who is the subject of the support order is a victim of the offense.*

(Emphasis added.)   Former R.C. 3119.05(I)(5); Sub. H.B. 366, 2018 Ohio Laws File 76.

{¶ 17} However, effective October 17, 2019, R.C. 3119.05(I)(5) was amended to omit any reference to incarcerated parents, and a new provision under R.C. 3119.05(J) was added that now provides:

When a court or agency calculates the income of a parent, *it shall not determine a parent to be voluntarily unemployed or underemployed and shall not impute income to that parent if the parent is incarcerated.*

(Emphasis added.)   R.C. 3119.05(J).

{¶ 18} Pursuant to R.C. 3119.05(J), a trial court is prohibited from finding that an incarcerated parent is voluntarily unemployed or underemployed and from imputing income to the incarcerated parent.   This version of the statute was in effect at the time the trial court implicitly found that Father was voluntarily unemployed as a result of his incarceration and imputed $216,000 of annual income to him for purposes of calculating his child support obligation.   Because R.C. 3119.05(J) prohibits a trial court from finding that an incarcerated parent is voluntarily unemployed/underemployed, and from imputing income to the incarcerated parent, we find that the trial court's decision to impute $216,000 of annual income to Father was contrary to law.

{¶ 19} Furthermore, even if the prohibition in R.C. 3119.05(J) did not apply here, there is nothing in the record indicating that the trial court considered any of the factors

under R.C. 3119.01(C)(17)(a) when it decided to impute $216,000 of annual income to Father. We have explained that "the trial court should consider all of the relevant factors in R.C. 3119.01(C)[(17)(a)] to determine what amount of potential income, if any, should be imputed to [the parent.]" *Mathewson v. Mathewson*, 2d Dist. Greene No. 05-CA-035, 2007-Ohio-574, ¶ 62, citing former R.C. 3119.01(C)(11). While an express determination with regard to every factor under R.C. 3119.01(C)(17)(a) is not required, the reviewing court still must be able to determine from the record that the trial court considered the relevant factors. *Misleh v. Badwan*, 9th Dist. Summit No. 24693, 2009-Ohio-6949, ¶ 9; *Albers*, 2d Dist. Greene No. 2012 CA 41, 2013-Ohio-2352, at ¶ 30; *Chapman v. Chapman*, 10th Dist. Franklin No. 05AP-1238, 2007-Ohio-1414, ¶ 12; *Justice v. Justice*, 12th Dist. Warren No. CA2006-11-134, 2007-Ohio-5186, ¶ 13. This is because consideration of the statutory factors is mandatory, and the trial court's failure to consider the factors constitutes an abuse of discretion. *Chawla v. Chawla*, 10th Dist. Franklin No. 13AP-399, 2014-Ohio-1188, ¶ 23, citing former R.C. 3119.01(C)(11); *Chapman v. Chapman*, 10th Dist. Franklin No. 04AP-812, 2005-Ohio-2801, ¶ 11; *Apps*, 10th Dist. Franklin Nos. 02AP-1072, 03AP-242, 2003-Ohio-7154, at ¶ 48.

{¶ 20} In this case, the trial court imputed $216,000 of annual income to Father without directly or indirectly referencing any of the statutory factors under R.C. 3119.01(C)(17)(a). All that can be gleaned from the record is that the trial court decided to impute $216,000 based solely on Amanda's testimony that Father made $18,000 per month before his incarceration. Therefore, in addition to being contrary to law, the trial court's judgment imputing $216,000 of annual income to Father was an abuse of discretion for failing to reference any of the factors under R.C. 3119.01(C)(17)(a). *See*

*Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 39-46 (finding an abuse of discretion where the trial court imputed $366,071.66 of annual income to the appellant by adopting the monthly income cited in his ex-wife's child support worksheet without referencing any of the statutory factors); *Mathewson*, 2d Dist. Greene No. 05-CA-035, 2007-Ohio-574, ¶ 58-63 (finding an abuse of discretion where the trial court imputed $30,000 of annual income to the appellant and did not reference any of the statutory factors).

**{¶ 21}** For the foregoing reasons, Father's sole assignment of error is sustained.


**Conclusion**

**{¶ 22}** Having sustained Father's assignment of error, the judgment of the trial court is affirmed as to the custody award and vacated as to the order that Father pay child support.

. . . . . . . . . . . .


DONOVAN, J. and EPLEY, J., concur.


Copies sent to:

Gregory K. Lind
Christopher A. Deal
L.N.S.
Hon. Thomas J. Capper