[Cite as *Feldmiller v. Feldmiller*, 2012-Ohio-4621.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| DAVID S. FELDMILLER | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 24989 |
| vs. | : | T.C. CASE NO. 2006 DR 01397 |
| SARA P. FELDMILLER | : | (APPEAL FROM THE COMMON PLEAS |
| (nka Priest) | | COURT - DOMESTIC RELATIONS |
| | : | DIVISION) |
| Defendant-Appellee | | |

. . . . . . . . .

**O P I N I O N**

Rendered on the 5th day of October, 2012.

. . . . . . . . .

Jennifer L. Brogan, Atty. Reg. No. 0075558, 400 PNC Center, 6 North Main Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

Keith R. Kearney, Atty. Reg. No. 0003191, 40 North Main Street, Suite 2160, Dayton, Ohio 45423
        Attorney for Defendant-Appellee

. . . . . . . . .

GRADY, P.J.:

{¶ 1}  David S. Feldmiller and Sara P. Feldmiller, nka Priest, were married on May 22, 1991.  Three children, one of whom is now emancipated, were born of their marriage.

{¶ 2}   David [1] filed a complaint for divorce on November 30, 2006.  Sara filed an answer and counterclaim on December 8, 2006.

{¶ 3}   Hearings were held on March 16 and 17 and June 29, 2011.  The parties entered stipulations agreeing to the valuation and division of their marital residence and other properties.  They also agreed concerning the identity of certain financial assets and the value of those assets as of December 31, 2010.

{¶ 4}   The domestic relations court entered its Final Judgment and Decree of Divorce on January 4, 2012. [Dkt. 181].  The court adopted the stipulations of the parties.  The court ordered a division of David's retirement accounts at their value as of December 31, 2010.  Sara was designated the residential parent and legal custodian of the parties' two minor children.   The court calculated David's child support obligation at $846.00 per month, and ordered him to pay that amount in the lump-sum amount of $65,000.00.  David was ordered to pay Sara a lump-sum amount of $250,000.00 as a distributive award due to his financial misconduct.  Sara was awarded a judgment of $25,000.00 as and for her attorneys' fees. The judgment also included other features standard to decrees of divorce.  David filed a timely notice of appeal from the Final Judgment and Decree.

{¶ 5}   First Assignment of Error:

"THE DOMESTIC RELATIONS COURT ABUSED ITS DISCRETION AND HELD AGAINST THE WEIGHT OF THE EVIDENCE BY ESTABLISHING THE

---

[1] For purposes of clarity and convenience, the parties will be identified by their first names.

TERMINATION DATE OF THE MARRIAGE AS DECEMBER 31, 2010, INSTEAD OF THE DATE OF THE FILING OF THE COMPLAINT FOR DIVORCE."

{¶ 6} In divorce proceedings the court is charged to divide the parties' separate and marital properties equitably. R.C. 3105.171(B). Marital property shall be divided equally, unless a different division would be equitable. R.C. 3105.171(C). Marital property includes all real and personal properties or interests therein that were acquired by either or both spouses during the marriage. R.C. 3105.171(A)(3)(a)(I). "During the marriage" means the period of time from the date of the marriage through the date of the final hearing in the divorce action, unless the court determines that either or both dates would be inequitable, in which event "during the marriage" means the period between the dates the court selects. R.C. 3105.171(A)(2).

{¶ 7} We review the court's selection of dates different from those prescribed by R.C. 3105.171(A)(2) on the abuse of discretion standard. "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeons, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. V. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990).

{¶ 8} The parties stipulated that David owns three IRA accounts that had a total value of $715,153.81 as of December 31, 2010. The parties further "agree(d) that the court shall determine between three different valuation dates (for those accounts). Those will be December 31, 2006, which represents the month end that the parties filed the divorce; June

30, 2007, which represents a date close to the parties' separation; or December 31, 2010, which represents the year-end (valuation) figures closest to the current trial date." (Tr. 18-19).

{¶ 9} The court ordered the value of the three accounts as of December 31, 2010, $715,153.81, minus David's premarital interest of $19,528.06, divided equally between the parties. The court also valued an IRA owned by Sara as of that same date.

{¶ 10} David argues that the domestic relations court abused its discretion when it failed to adopt December 31, 2006, which was one month after and the end of the year following the filing of his complaint for divorce on November 30, 2006, as the date the marriage terminated. David argues that the December 31, 2006 date would be more equitable because he was prompted to file his complaint after learning that Sara was having an extramarital affair, which represents the *de facto* termination of their marriage.

{¶ 11} The court was authorized to choose a date prior to the date of the final hearing, June 29, 2011, upon a finding that the prior date would be more equitable for purposes of the division of the parties' marital property. The parties agreed that the court could adopt any one of three dates. We do not agree that December 31, 2006, following the filing of David's complaint, would necessarily be a more equitable date. The parties remained living in the same household, albeit estranged, until Sara vacated the marital residence in July, 2007. When asked whether the marriage was then over, Sara testified: "One would assume so." (Tr. 491).

{¶ 12} We might have been inclined to find the date the parties separated in July, 2007 as the more equitable date. However, that is not our charge. Our charge is to determine

whether the domestic relations court abused its discretion when it chose the date of December 31, 2010, for the purpose of determining and dividing the parties' marital interest in David's IRA accounts. Again, we must find that there is no sound reasoning process that would support the decision. *AAAA Enterprises, Inc.*

{¶ 13} The record demonstrates that the marital value of David's three accounts appreciated from $464,758.87 as of December 31, 2006, to $495,446.12 as of June 30, 2007, to $715,153.81 as of December 31, 2010. David continued to make contributions to his IRAs during that time. Nevertheless, the court was required to determine the parties' marital interest in those accounts and divide those interests equitably. R.C. 3105.171(B). We cannot find that the court abused its discretion in adopting the December 31, 2010 date. It was a date the parties offered, and was the date most recent to the date of the final hearing, June 29, 2011, for which R.C. 3105.171(A)(2)(a) creates a preference. There was a sound reasoning process for the court's decision. *Id*.

{¶ 14} The first assignment of error is Overruled.

{¶ 15} Second Assignment of Error:

"THE DOMESTIC RELATIONS COURT ERRED IN AWARDING THE DEFENDANT A DISTRIBUTIVE AWARD FOR PLAINTIFF'S ALLEGED FINANCIAL MISCONDUCT."

{¶ 16} R.C. 3105.171(E)(1) provides that the court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. Paragraph (E)(4)of that section further states:

If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

{¶ 17} R.C. 3105.171(A)(1) states:

"Distributive award" means any payment or payments, in real or personal property, that are payable in a lump sum over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code.

{¶ 18} In *Mantle v. Sterry*, 10th Dist. Franklin No. 02AP-286, 2003-Ohio-6058, the Tenth District held:

{¶32} The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing (i.e., wrongful scienter). *Hammond v. Brown* (September 14, 1995), Cuyahoga App. No. 67268. "Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." Id. Financial misconduct involves some element of profit or interference with another's property rights. Id. An allegation of financial misconduct, unsupported by evidence of wrongdoing, will not support a dissipation award. *Rinehart v. Rhinehart* (May 18, 1998), Gallia App. No. 96 CA 10.

Accord, *Moore v. Moore*, 175 Ohio App. 3d 1, 2008-Ohio-255, 884 N.E.2d 1113 (6th Dist.).

{¶ 19} David is a certified public accountant. After graduation from college, he joined Battelle & Battelle, LLP, in 1979. David's responsibilities increased through the following years. He became a partner of Battelle & Battelle in 1995, eventually responsible for the firm's not-for-profit sector clients. In the years 2006 to 2009, David's annual earnings from Battelle & Battelle were between $330,000.00 and $390,000.00.

{¶ 20} David claims that his job performance suffered after learning that Sara was having an extramarital affair. Also, in the Summer of 2007, David became sole caretaker of his mother. David consulted a personal counselor about the effect these issues were having on his job performance.

{¶ 21} After reviewing those matters, the court made the following findings and conclusions under the heading "Spousal Support/Distributive Award":

In addition, the Plaintiff had a laptop stolen from his vehicle that was parked in his driveway. This laptop contained the names and confidential information for at least 14,000 Battelle and Battelle clients. All of these clients had to be notified by Battelle and Battelle. The Plaintiff admitted that at least one partner thought that the Plaintiff's negligence with respect to the laptop should have been immediate grounds for dismissal. Through most of 2007 and 2008, the Plaintiff was placed under partner review and all of his work was scrutinized and he was required to meet regularly with the reviewing partner. The Plaintiff's performance did not improve to the satisfaction of the partnership in terms of timeliness and other requirements. The Plaintiff agreed to act as Trustee for a client which was a clear violation of partnership

rules. Effective September 2009, his employment with Battelle and Battelle was terminated. The Plaintiff is currently under a non-solicitation agreement and cannot solicit any clients from Battelle and Battelle and that non-solicitation\non-competition agreement is in effect until 2014. The Court found that the Plaintiff's termination was clearly a termination for cause. In addition, the Court finds that the Plaintiff is pursuing self-employment as a CPA and that his earnings have been modest to date, $7,000.00 to $8,000.00.

The Defendant is requesting a lump sum of $250,000.00 to compensate her for post decree spousal support she would have received had the Plaintiff retained his employment. Based upon the evidence, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Defendant is entitled to $250,000.00 in the nature of a distributive award due to the financial misconduct of the Plaintiff. The Court further ORDERS that the Plaintiff shall pay to the Defendant this sum from his separate assets within thirty (30) days.

{¶ 22} The fact that David was terminated for cause does not demonstrate, in and of itself, that he engaged in financial misconduct for purposes of R.C. 3105.171(E)(4). We agree with the holding in *Mantle* that the required misconduct must portray a form of wrongdoing undertaken for the purpose of profiting the offending spouse and/or defeating the other spouse's share of marital assets. The court made no finding that the conduct in which David had engaged, albeit a breach of his contract with Battelle & Battelle, was undertaken to profit him or harm Sara.

{¶ 23} The court found that Sara was harmed by David's termination because it operated to reduce the amount of spousal support Sara would otherwise have received had David retained his partnership with Battelle & Battelle. The court granted a $250,000.00 lump sum judgment to Sara from David's separate property "in the nature of a distributive award." However, R.C. 3105.171(A)(1) provides that distributive awards "do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code." That prohibition likewise applies to a distributive award to compensate for a loss of spousal support.

{¶ 24} For the foregoing reasons, we find that the domestic relations court abused its discretion when it ordered David to pay Sara a lump-sum amount of $250,000.00 upon a finding that he engaged in financial misconduct.

{¶ 25} The second assignment of error is Sustained.

{¶ 26} Third Assignment of Error:

"THE DOMESTIC RELATIONS COURT ABUSED ITS DISCRETION BY NAMING THE DEFENDANT THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILDREN."

{¶ 27} The abuse of discretion that David argues is based on two contentions. First, that the court in its judgment failed to discuss the statutory factors in R.C. 3109.04(F)(1) and (F)(2). Second, that the evidence supports a finding that shared parenting is in the children's best interest.

{¶ 28} Concerning shared parenting, Sara filed a Petition to Adopt Shared Parenting Plan and a Proposed Shared Parenting Plan on March 15, 2010. [Dkt. 125]. However, Sara

subsequently withdrew her request for shared parenting when the issue of parental rights and responsibilities for care of the children was heard during the first day of trial, March 16, 2011. (Tr. 76).

{¶ 29} David filed a Request for Shared Parenting and Proposed Shared Parenting Plan [Dkt. 154] on March 10, 2011. R.C. 3109.04(G) provides that in divorce actions "[t]he plan for shared parenting shall be filed * * * at a time at least thirty days prior to the hearing on the issue of parental rights and responsibilities for the care of the children."

{¶ 30} Inasmuch as David's request for shared parenting was not supported by a timely-filed plan, and Sara's request was withdrawn, the court was not required to decide whether shared parenting should be ordered. The court did not abuse its discretion in failing to consider shared parenting or find that shared parenting is in the minor children's best interest.

{¶ 31} R.C. 3109.04(A) authorizes the court in a divorce proceeding to allocate parental rights and responsibilities for the care of the minor children of the parties, taking into consideration the best interest of the children pursuant to R.C. 3109.04(B)(1). R.C. 3109.04(F)(1) provides that the court shall consider "all relevant factors" in making that best interest determination, including factors (a) through (j) of that section. R.C. 3109.04(F)(2) provides factors for the court to consider in determining whether shared parenting is in the best interest of the children. For reasons previously discussed, the domestic relations court was not required to consider the R.C. 3109.04(F)(2) factors.

{¶ 32} David did not request findings of fact or conclusions of law pursuant to Civ. R. 52, and therefore the court's judgment concerning allocation of parental rights and

responsibilities "may be general for the prevailing party." Civ. R. 52. We presume the regularity of the trial court's proceedings. *Scovanner v. Toelke*, 119 Ohio St. 256, 163 N.E. 493 (1928). Although the court is instructed by R.C. 3109.04(F)(1) to "consider" the factors enumerated therein, the court's alleged failure to give the required consideration will not be found by an appellate court to be against the manifest weight of the evidence so long as the court's judgment is supported by some competent, credible evidence. *Bunten v. Bunten*, 126 Ohio App.3d 443, 710 N.E.2d 757 (3d Dist. 1998).

{¶ 33} The court entered a general judgment stating that "based on the evidence that the Defendant shall be designated as the residential parent and legal custodian of the parties' minor children, [E] and [G]." [Dkt. 181, section IV]. That evidence included the Report and Supplemental Report of the Guardian *ad Litem* appointed by the court, Kenneth J. Krochmal, who also testified in the proceeding.

{¶ 34} The Guardian *ad Litem* (hereafter referred to as "GAL") filed two written reports. In his Report [Plaintiff's Exhibit 38], the GAL recommended shared parenting, but failing that further recommended that David be designated the children's residential parent and legal custodian, providing that the parenting time schedule for visitation the parties established should continue. Following the court's order granting Sara's request for reconsideration, the GAL filed a Supplemental Memorandum [Plaintiff's Exhibit 39]. The GAL again recommended shared parenting. However, the GAL withdrew his prior conclusion that, failing that, David should be designated the children's residential parent and legal custodian because he is the more stable parent. After reviewing his reasons, the GAL concluded that Sara is the more stable parent, and recommended that Sara should be the

children's residential parent and legal custodian should her request for shared parenting not be granted. The GAL again recommended that the current visitation schedule continue. The Report and Supplemental Memorandum were both filed before Sara withdrew her shared parenting request and plan.

{¶ 35} The GAL testified that he changed his recommendation after learning that David had for several months not told Sara of his termination by Battelle & Battelle and its impact on her and the children, including their loss of health insurance. The GAL testified that [G.] told him that David was sometimes not responsive to her requests, and on one occasion grabbed and pulled her hair and caused her to cry when [G.] asked David where her shoes were. The GAL also confirmed that [G.] said that Sara is the parent who always takes her to the medical, dental, and eye examination appointments, to everything, and that she would like Sara to continue to be so involved. The other child, [E.], told the GAL that Sara attempted to involve David in parenting decisions. The GAL withdrew his recommendation concerning shared parenting, but recommended that the current visitation schedule continue.

{¶ 36} In its judgment and decree, the court stated: "The court adopted in its entirety the supplemental report of the Guardian Ad Litem, Kenneth Krochmal." [Def. 181, § IV]. The GAL's supplemental report and testimony is competent, credible evidence on which the court could rely in deciding to designate Sara the children's residential parent and legal custodian. We find no abuse of discretion.

{¶ 37} The third assignment of error is Overruled.

{¶ 38} Fourth Assignment of Error:

"THE DOMESTIC RELATIONS COURT ABUSED ITS DISCRETION IN ITS AWARD OF CHILD SUPPORT."

{¶ 39} Both parties filed child support calculation worksheets. The court rejected David's proposal. Regarding Sara's proposal, the court stated:

The Defendant is requesting child support based on imputed income to the Plaintiff by $366,071.66 per year and the Defendant's income of $26,896.83 per year. The Defendant's calculation results in child support payable by the Plaintiff in the amount of $846.00 per month per child for two children.

[E.] will be 18 years of age on February 14, 2013, although not necessarily emancipated by that date, and [G.] will turn 18 years of age on September 14, 2015, and may or not be emancipated as of that date. The Defendant is requesting a lump sum of $100,000.00 as and for child support, on a somewhat distributive award theory.

The Court ORDERS the Plaintiff to pay defendant the lump sum of $65,000.00. Upon payment of said sum by the Plaintiff to the Defendant, the Defendant shall be and the Court ORDERS the Defendant solely responsible for all school fees, extracurricular activity fees, and clothing for both minor children.

The Plaintiff/Father, David Feldmiller ("Obligor") shall pay to the Defendant/Mother, Sara Feldmiller ("Obligee") as and for support of the two

minor children of the parties, the sum of $65,000.00 lump sum, there being two children for a total of $65,000.00 directly to the Defendant/Mother.

Still further, Father's child support obligation shall continue for a particular child until the child reaches the age of majority or no longer attends an accredited high school on a full time basis, whichever occurs last, but not beyond the child's nineteenth birthday or until the child is otherwise emancipated by law, or until further Order of the Court.

**{¶ 40}** R.C. 3119.02 governs calculation of a parent's child support obligation, and provides:

In any action to which a court child support order is issued or modified, in any other proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order, or when a child support enforcement agency determines the amount of child support that will be paid pursuant to an administrative child support order, the court or agency shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code. The court or agency shall specify the support obligation as a monthly amount due and shall order the support obligation to be paid in periodic increments as it determines to be in the best interest of the children. In performing its duties under this section, the court or agency is not required

to accept any calculations in a worksheet prepared by any party to the action or proceeding. (Emphasis supplied).

**{¶ 41}** R.C. 3119.022 provides that when a court calculates the amount of child support to be paid pursuant to a child support order in a proceeding in which one parent is the residential parent and legal custodian of all the children who are subject to the order, "the court * * * shall use a worksheet identical in content and form" to the model set out in that section. After arriving at the obligor's actual annual obligation, the court is authorized at line 27(a) of the model worksheet to deviate from that amount if "the amount shown * * * would be unjust or inappropriate." However, the court is required to find and state "specific facts" to support the deviation. Factors relevant to granting a deviation include the factors set out in R.C. 3119.23(A) through (P), which is "[a]ny other relevant factor." After then arriving at a "Final Child Support Order," the court is required at line 29 to enter the amount of support "For Decree: Child Support per month."

**{¶ 42}** It appears that the court adopted the Child Support Calculation Worksheet that Sara filed, which arrived at a support obligation for David in the amount of $846.00 per month per child, to continue "not beyond the child's nineteenth birthday or until the child is emancipated, or until further Order of the Court."

**{¶ 43}** The Decree was entered on January 4, 2012. [E.] will reach her nineteenth birthday on February 14, 2014, a period of twenty-six months, for which David's support obligation for [E.] could total $21,996.00. [G.] will reach her nineteenth birthday on September 14, 2016, a period of fifty-seven months, for which David's support obligation for [G.] could total $48,222.00. David's support for both children, barring an earlier termination,

would then total $70,218.00. Instead of ordering that amount paid in monthly payments of $846.00 per child, the court ordered David to pay Sara the lump sum of $65,000.00 as and for support of both children.

{¶ 44} In adopting the worksheet that Sara filed, the court appears to have imputed an annual income to David in the amount of $366,071.66. Courts are required to follow a two-step process in imputing income. First, there must be a finding that a parent is voluntarily unemployed or underemployed before income can be imputed. *Badovick v. Badovick*, 128 Ohio App.3d 18, 713 N.E.2d 1066 (8th Dist. 1998); *In re Westendorf*, 1st Dist. Hamilton No. C-020804, 2003-Ohio-5955. Second, a parent's potential income must be determined by evaluating the parent's work experience, education, any mental or physical disabilities, prevailing job opportunities in the area, special skill or training, evidence of ability to earn income, special needs of the children, and any other relevant factor. R.C. 3119.01(C)(11)(a); *Kiehborth v. Kiehborth*, 169 Ohio App.3d 308, 2006-Ohio-5529, 862 N.E.2d 863 (5th Dist.). Imputed income also arises from non-income producing assets as determined from the local passbook savings rate or another appropriate rate as determined by the court, but not exceeding the statutory rate of R.C. 1343.03(A). R.C. 3119.01(C)(11)(b).

{¶ 45} The court made no finding that David is voluntarily underemployed. Neither did the court determine David's potential income with reference to the factors in R.C. 3119.01(C)(11)(a), or otherwise say that it had. Instead, the $366,071.66 in annual income that was imputed appears to be based on the income David realized from his position with Battelle & Battelle, which was as a partner responsible for a major area of client services. Since his termination, it is unrealistic to assume that a similar income is available to David

from other sources, particularly in view of the non-solicitation agreement with Battelle & Battelle to which David is subject.

{¶ 46} We find that the court abused its discretion when it ordered an amount of child support based on an annual income of $366,071.66 that Sara imputed to David. The further issue is whether the court also abused its discretion in ordering the amount of support paid in a lump sum instead of monthly installments.

{¶ 47} In *Roach v. Roach*, 164 Ohio St. 587, 132 N.E.2d 742 (1956), the Supreme Court held:

> Where a court in a divorce action makes an order for the support of a minor child of the parties, payable in installments, over which order the court retains expressly or by implication continuing jurisdiction, such order must be reduced to a lump-sum judgment as to unpaid and delinquent installments before an execution may be lawfully levied thereunder.

*Id*., paragraph 2 of the Syllabus by the Court.

{¶ 48} A lump sum judgment for the amount of support payments unpaid and delinquent is available as a relief for the delinquency because that amount is fixed and payable on the date the last support payment becomes due and owing; at that time, the payee has an absolute right to have all past due payments reduced to a judgment on which execution may be levied. *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959). However, an order or judgment for installment payments, being uncertain in amount when it is rendered, is typically not rendered in the form of a sum certain, and in the case of child support payments is entered as an order to pay a certain amount periodically until the minor becomes emancipated. "It

would be possible, by a multiplication of the number of payment periods in a year by the number of years contemplated by the support order, then by a multiplication of that product by the amount of the periodical payment, to determine mathematically the sum certain contemplated by the order on the date of its issuance. There exists on that date, however, no certainty that the child will live for the duration of the support order or that the court issuing the order will not modify it as to future installments sometime prior to its termination."

*Id*., at 450.

{¶ 49} *Smith* preceded the original child support guidelines, which have been refined by subsequent enactments to include the provisions in R.C. Chapter 3119. None of those provisions expressly provides for lump sum payments of child support. Instead, the regimen now imposed by R.C. Chapter 3119 calls for child support obligations to be specified "as a monthly amount due * * * to be paid in periodic increments as (the court) determines to be in the best interest of the children." R.C. 3119.02. That section authorizes the court to structure the particular periodic increments to be other than "monthly" payments when it is in the best interest of the child or children. It does not expressly authorize the court to abandon the periodic increments requirement in favor of a lump sum judgment.

{¶ 50} R.C. 3111.13(D), which is part of the parentage chapter, provides that support orders "ordinarily shall be for periodic payments that may vary in amount," but also authorizes the court to order the "purchase of an annuity (that) may be ordered in lieu of periodic payments." However, the exigencies of parentage are different from those in a divorce action. Also, while R.C. 3111.13(D) formerly allowed the further alternative of a "lump sum

payment," that alternative was subsequently removed from R.C. 3111.13(D) by the General Assembly. 2000 S.B. 180, eff. March 22, 2001.

{¶ 51} It is, in our view, difficult to read R.C. Chapter 3119 to allow orders for lump sum payments of child support on an original or modified basis. Further, even though R.C. 3105.011 preserves the full equitable powers of the court in domestic relations matters, the court's particular exercise of those powers must accord with R.C. Chapter 3119. Therefore, even if the court could, or does, order a lump sum payment as a "deviation" from the "child support per month" order that R.C. 3119.022 requires, that section also requires the court to state "specific facts" supporting the deviation. R.C. 3119.022, line 27(a). The court stated no specific facts supporting the $65,000.00 lump sum payment it ordered in lieu of the $846.00 per child per month the court found that David should pay.

{¶ 52} Finally, David argues that the court abused its discretion because its support award appears to be based on a finding that David failed to offer a plan to pay his children's expenses. David claims that he did so in the Shared Parenting Plan he filed. As we previously held, that plan was not timely filed. Further, this contention is too speculative to permit us to resolve it.

{¶ 53} The domestic relations court abused its discretion when it imputed an annual income of $366,071.66 to David, and when it ordered a lump sum payment of $65,000.00 as and for child support instead of periodic monthly payments of the amount due, absent a finding of specific facts in support of a lump sum judgment.

{¶ 54} The fourth assignment of error is Sustained.

{¶ 55} Fifth Assignment of Error:

"THE DOMESTIC RELATIONS COURT ABUSED ITS DISCRETION BY FAILING TO ACCOUNT FOR THE TAX LIABILITY CREATED AS A RESULT OF THE CONVERSION FROM THE CASH BASIS METHOD OF ACCOUNTING TO THE ACCRUAL BASIS METHOD OF ACCOUNTING."

{¶ 56} Under the cash method of accounting, a taxpayer is not required to report income as taxable income until the payment is actually received.  (Tr. 149, 150, 239).   Under the accrual method of accounting, a taxpayer is required to report the income as taxable income when it is earned, rather than when it was received.   (Tr. 150, 238).

{¶ 57} The parties filed joint income tax returns until 2006.   During those years, they used the cash method of accounting in reporting the salary David was paid by Battelle & Battelle.   The parties filed separate tax returns beginning with the 2006 tax year.   David did not file returns for the years 2006 to 2009 until 2010.   Because he could no longer use the cash method of accounting, and had to use the accrual method of accounting following his termination by Battelle & Battelle, David was required to report the income the parties received in prior years on his 2009 tax return.   David claims that additional income was $225,407.00, and that it increased his income tax liability for 2009 by an additional $93,539.00.   Because that additional income was actually received by the parties while they were married and had filed joint returns, David claims that the additional $93,539.00 is a marital debt that the court was required to divide between the parties, but did not.

Joint debts are not property or an interest in property the domestic relations court must equally divide between the spouses.   R.C. 3105.17(B). They represent merely a charge against the marital property that the court

divides. The court may then order one of the parties to pay some or all of the joint debt out of his or her share of marital property or out of the separate property disbursed to that spouse. The court does not abuse its discretion by allocating the debts between the parties on an unequal basis, so long as the allocation is equitable.

*Maloney v. Maloney*, 160 Ohio App. 3d 209, 2005-Ohio-1368, 826 N.E.2d 864, ¶ 48 (2d Dist.)

**{¶ 58}** In its decree, the court divided a tax refund for the year 2005 David had retained, but the court did not address his claim concerning the additional income he reported for 2009. Both parties offered evidence on that issue.

**{¶ 59}** On the first day of hearings, the parties entered into a number of stipulations concerning division of marital property, including the following:

Debts. The parties acknowledge there's no joint debts existing between the parties with the exception that the plaintiff is raising an issue concerning a past joint Citi equity line of credit debt in the amount of $4,973.75. Except for that debt, each party will be responsible for timely payment of any and all other debts individually incurred by them or listed in names except as otherwise provided for in the parties' stipulation.

(Tr. 14).

**{¶ 60}** The only other stipulation concerning joint debts involved refunds for overpayments of estimated taxes.

{¶ 61} In its judgment and decree, at § I, the court adopted a number of the parties' stipulations concerning property division. Item 7 of that section of the decree provides:

> [B]oth Parties shall be solely responsible for the timely payment of any all debts individually listed in their own names and hold the other Party blameless and harmless thereon, with the exception of the National City Equity Line which is a contested issue.

[Dkt. 181, p. 3].

{¶ 62} David may not have intended to include his additional tax payment for the year 2009 among the debts he individually incurred and to which the stipulation referred. However, the issue is whether the trial court abused its discretion when the court apparently construed the stipulations to that effect. On this record, we cannot find that there was no sound reasoning process to support the court's application of the stipulation. *AAA Enterprises, Inc.*

{¶ 63} Even had there been no stipulation, we would not find an abuse of discretion. There is evidence that, beginning in 2006, David resisted Sara's request to file joint tax returns (Tr. 223-224, 446-448), requiring Sara to file separate returns for the years 2006 through 2009. (Tr. 444). David did not file his returns for those years until 2010. Under those circumstances, we could not find that the court acted unreasonably by failing to grant David's request to order Sara to pay David a share of his additional tax liability for the year 2009 as a charge against Sara's share of the marital property. *Maloney*.

{¶ 64} The fifth assignment of error is Overruled.

{¶ 65} Sixth Assignment of Error:

"THE DOMESTIC RELATIONS COURT ERRED IN AWARDING THE DEFENDANT $25,000.00 IN ATTORNEY FEES."

**{¶ 66}** R.C. 3105.73(A) provides:

In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

**{¶ 67}** At § IX of its judgment and decree, the could held:

The Defendant is requesting an award of attorney fees. The Court finds that this litigation has been unreasonably delayed due to the actions of the Plaintiff. The court finds that in view of all of the assets of the Parties, the contested custody matter and other issues, from the onset, this case would have been an expensive case to litigate with the need for expert witnesses, etc. The Court finds however, that the Plaintiff's lack of communication with his initial lawyer, his failure to provide discovery, failure to file income tax returns in a timely fashion, have exacerbated the attorney fees required by the Defendant.

The Defendant's total legal fees, which were stipulated as reasonable and necessary, total $63,296.25. The Defendant requested that she be awarded

at least half of her attorney fees payable by the Plaintiff. The Plaintiff argued that only 22 hours of fees have been caused by the Plaintiff.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Defendant shall receive $25,000.00 as and for reasonable and necessary attorney fees from the Plaintiff. Said attorney fees shall be paid to the Defendant within thirty (30) days of the effective date of Decree.

[Dkt. 181, p. 7].

**{¶ 68}** David argues that the $25,000.00 award was an abuse of discretion and "not based on the manifest weight of the evidence." (Brief, p. 33). The proper standard is that a decision is *against* the manifest weight of the evidence. A decision of a trial court will not be reversed on that basis when it is supported by some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶ 69}** David does not dispute the court's findings regarding his conduct and its effect on the litigation of the case. David does dispute the amount of attorney's fees the court awarded. David relies on our holding in *Janis v. Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731.

**{¶ 70}** In *Janis*, the court made similar findings concerning the conduct of the husband and his prior attorney. The court then awarded the wife the entire amount of her attorney's fees in the case. We reversed, finding that the award of the entire amount of the wife's attorney's fees was unreasonable under the circumstances. One of the circumstances

we identified was the wife's failure to identify the portion of that total that was attributable to the conduct of the husband and/or his attorney. *Id*, ¶ 87.

**{¶ 71}** The parties stipulated that the hourly rate Sara's attorneys charged is reasonable and that the work they performed was reasonable and necessary. The fees charged by Sara's attorneys totaled $63,296.25 for 358 hours of billable time. David contends that only twenty-two of those hours were directly the result of the conduct for which the court made its award. In her testimony, Sara disputed that proposition, but without identifying what additional time was required. (T. 494).

**{¶ 72}** The remaining, unpaid balance of Sara's bill from her attorneys when the court entered its award was approximately $50,000.00. Sara requested an award of one-half of her total fees, or $31,648.25. Instead, the court awarded her one-half of the approximate outstanding balance, $25,000.00.

**{¶ 73}** The sense of our holding in *Janis* is that, when an award of attorneys' fees is based on the conduct of a party, the record must reasonably demonstrate some nexus between the amount of fees awarded pursuant to R.C. 3105.73(A) and the particular conduct for which the award is made. In *Janis*, we held that an award of all the fees charged was an abuse of discretion. We see no real difference between that and an award of one-half or some other arbitrary portion of the unpaid fees remaining, as the court ordered in the present case. Therefore, the trial court abused its discretion when it ordered David to pay Sara $25,000.00 as and for her attorney's fees.

**{¶ 74}** The sixth assignment of error is Sustained.

**{¶ 75}** Having sustained the second assignment of error, we will reverse and vacate the domestic relations court's distributive award to Sara in the amount of $250,000.00 on a finding that David engaged in financial misconduct.

**{¶ 76}** Having sustained the fourth assignment of error, we will reverse the domestic relations court's order requiring David to pay Sara child support in the lump sum amount of $65,000.00, based on an income imputed to David, and will remand the case to the trial court for further proceedings on the matter of child support, consistent with this opinion.

**{¶ 77}** Having sustained the sixth assignment of error, we will reverse the domestic relations court's award of $25,000.00 to Sara as and for her attorney's fees, and will remand the case to the trial court for further proceedings on Sara's request for attorney's fees, consistent with this opinion.

**{¶ 78}** The judgment of the domestic relations court from which this appeal was taken will otherwise be affirmed.

Fain, J., concurs.

Froelich, J., concurring:

**{¶ 79}** In reviewing the filings in the trial court, the transcripts, and the briefs on appeal as well as having heard excellent oral arguments, I have no doubt that these divorce proceedings were contentious and that the parties, the attorneys, and the judge are aware of actions that are not reflected in the written record. However, in reviewing assignments of error, we are limited to that record, including any findings by the court.

**{¶ 80}** I am writing separately only to emphasize that I believe we are not holding that a court cannot impute income, cannot award attorney fees for financial misconduct or

otherwise, can never award lump sum child support, or cannot make a distributive award for financial misconduct.

{¶ 81} Rather, we are addressing specific assignments based on a specific record of specifically determined facts in the record.

Copies mailed to:

Jennifer L. Brogan, Esq.
Keith R. Kearney, Esq.
Hon. Timothy D. Wood