[Cite as *Hadder v. Hadder*, 2014-Ohio-5263.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

SUE A. HADDER                                       :
                                                    :        Appellate Case No. 26183
        Plaintiff-Appellee                          :
                                                    :        Trial Court Case No. 11-DR-389
v.                                                  :
                                                    :
THOMAS L. HADDER                                    :        (Civil Appeal from Common Pleas
                                                    :         Court, Domestic Relations)
        Defendant-Appellant          :
                                                    :


. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of November, 2014.

. . . . . . . . . . .


ELIZABETH J. HENLEY, Atty. Reg. #0034207, Talbott Tower, Suite 1205, 131 North
Ludlow Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee, Sue A. Hadder

LAURA L. KENDELL, Atty. Reg. #0072490, and BRIAN D. HUELSMAN, Atty. Reg.
#0055444, Moore & associates, 262 James E. Bohanan Memorial Drive, Vandalia, Ohio
45377
        Attorneys for Defendant-Appellant, Thomas Hadder

ALEXANDER ARESTIDES, Atty. Reg. #0079608, 1100 Courthouse Plaza SW, 10 North
Ludlow Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellee, Wright Patt Credit Union

FAIN, J.

{¶ 1} Appellant Thomas Hadder appeals from a judgment and decree of divorce rendered by the Montgomery County Common Pleas Court, Domestic Relations Division. Mr. Hadder contends that the trial court erred in concluding that an annuity retirement account constituted marital property. He further contends that the trial court erred by requiring him to reimburse Ms. Hadder for marital funds he expended on his mother's estate and on his attorney fees. Mr. Hadder also contends that the trial court abused its discretion with regard to the division of medical bills incurred during the marriage. Finally, he contends that the trial court erred by failing to conclude that Ms. Hadder committed financial misconduct during the course of the proceedings.

{¶ 2} We conclude the Mr. Hadder failed to demonstrate error with regard to the division of the annuity retirement account. We further find no abuse of discretion regarding the requirement that Mr. Hadder reimburse Ms. Hadder one-half of the marital monies expended for his mother's estate and his attorney fees. Likewise, we find no abuse of discretion in the division of the medical bills. Finally, Mr. Hadder failed to establish any evidence of financial misconduct.

{¶ 3} Accordingly, the judgment of the trial court is Affirmed.

## I. The Course of Proceedings

{¶ 4} Sue and Thomas Hadder were married on October 23, 1982. Ms. Hadder filed a complaint for divorce in April 2011. Along with the complaint for divorce, she filed a motion to restrain Mr. Hadder from improper use of certain financial accounts during the

pendency of the divorce.

{¶ 5}    A hearing was conducted in June 2013.  Of relevance hereto, the trial court found that Mr. Hadder failed to demonstrate that he was entitled to receive a separate award of a portion of an annuity retirement account held with Jackson National Life.  The trial court ordered Mr. Hadder to reimburse Ms. Hadder one-half of the marital monies he expended to pay his attorney fees, and one-half of the marital monies expended with regard to his mother's estate.  The trial court ordered Ms. Hadder to pay 35% of the medical bills incurred by Mr. Hadder during the marriage.  Finally, the trial court concluded that Mr. Hadder failed to establish any financial misconduct on the part of Ms. Hadder.

{¶ 6}    Mr. Hadder appeals.

## II. The Trial Court Did Not Err in Finding that a Jackson Life Annuity Was Completely Marital Property, Because the Husband Failed to Trace the Funds Going into that Annuity Satisfactorily

{¶ 7}    Mr. Hadder's First and Second Assignments of Error state:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT THE JACKSON NATIONAL LIFE ANNUITY WAS COMPLETELY MARITAL, INSTEAD OF FINDING THAT A PORTION OF IT WAS APPELLANT'S SEPARATE PROPERTY.

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DETERMINING THAT APPELLANT DID NOT TRACE PREMARITAL FUNDS INTO HIS JACKSON NATIONAL LIFE ANNUITY.

{¶ 8}     Mr. Hadder contends that 26.02% of the funds held in annuities with Jackson National Life constitute his separate property, and that the trial court erred by failing to award him that portion as his separate property.

{¶ 9}     Mr. Hadder was employed by GLS/Composite One (GLS) in 1976.  He became eligible to participate in the company retirement plan on January 1, 1977.  He and Ms. Hadder did not marry until October 23, 1982; almost six years after his eligibility date. He ended his employment with the company in June 1999, at which time the retirement account was valued at $318,775.75.

{¶ 10}     There is no evidence in the record to indicate how much money Mr. Hadder placed into the retirement account prior to the marriage.  There is evidence demonstrating that the company began matching his contributions to the retirement account after the date of the marriage.  The evidence shows that Mr. Hadder earned $16,500 annually when he began working for GLS.  His annual income was $29,650 when he and Ms. Hadder married.  At the time he left the company in 1999, Mr. Hadder was earning $110,203.

{¶ 11}     According to Mr. Hadder, he rolled the entire GLS retirement account into several other retirement accounts, which were ultimately rolled into annuity accounts with Jackson National Life.  He contends that a portion of the Jackson National Life annuities constitutes pre-marital property, which the trial court should have awarded solely to him.

{¶ 12}     The evidence supports a finding that in 1999, Mr. Hadder rolled over the sum of $284,664.27 into a Morgan Stanley Dean Witter (Morgan Stanley) account with a number ending in 57799, and that he rolled over the sum of $36,585 into a different Morgan

Stanley account with a number ending in 60051. This depleted the GLS retirement fund.

{¶ 13} There is also evidence that from the Morgan Stanley account ending in 57799, Hadder rolled the sum of $93,533.30 into another Morgan Stanley account ending in 18246. From account 57799, he also rolled the sum of $26,232.69 into an account with an investment company titled Linsco. The evidence shows that the sum of $102,603.74 was taken later from Morgan Stanley account number 18246 and placed into the same Linsco account. There is evidence to support the trial court's finding that the sum of $128,836.43 was taken from the Linsco account and placed into a Jackson National Life annuity account.

{¶ 14} According to Mr. Hadder, $135,000 was also rolled from the Morgan Stanley account number 57799 into another Morgan Stanley account, number 122787; $66,550.07 of which was then rolled from account number 122787 into the Jackson National Life annuity account.

{¶ 15} Mr. Hadder presented the testimony of John Bosse, a certified public accountant. Bosse testified that because the pre- and post-marital values of the original GLS account were not known, he used a time-value coverture fraction to determine that 26.02% of the account was premarital, with the remaining 73.98% constituting marital property. He testified that the same proportion of the Jackson National Life annuity was a premarital asset. He admitted that this assumed that no other funds except the monies rolled from the original GLS retirement account were rolled into the annuity account.

{¶ 16} Ms. Hadder presented the testimony of her accountant, Todd Fisher. Fisher testified that he utilized Mr. Hadder's social security earnings statement to determine the premarital earnings, and the appropriate contribution level for the GLS retirement fund

prior to the marriage. Based upon this, he determined that the marital portion of the account was at least ninety percent.

{¶ 17} The trial court found that Mr. Hadder failed to trace all of the GLS funds into the Jackson Life annuities. Specifically, the trial court concluded that he did not trace the funds from the Morgan Stanley account number 57799 into Morgan Stanley account number 122787. Furthermore, the trial court noted that Mr. Hadder deposited marital funds of at least $7,500 into the Linsco account. As previously noted, Bosse testified that, if any marital funds were deposited into the accounts, his coverture fraction calculation would be incorrect as to the annuities. Thus, the trial court found that Mr. Hadder failed to prove a value of his separate interest in the annuity account.

{¶ 18} A domestic relation court has broad discretion in dividing marital assets. *Smith v. Smith,* 182 Ohio App.3d 375, 2009-Ohio-2326, 912 N.E.2d 1170, ¶ 15 (2d Dist.). Therefore, an appellate court should uphold the trial court's decision regarding property divisions unless the trial court abused its discretion. *Id.*, ¶ 16. A trial court abuses its discretion when its attitude is demonstrably unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 19} Based upon the evidence in this record, we conclude that the trial court did not abuse its discretion in its division of this property. While it is clear that some portion of the GLS funds were non-marital, Mr. Hadder was unable to demonstrate that the Jackson Life annuity account consisted solely of monies rolled over from the GLS retirement account, and also failed to demonstrate the amount of the annuity that should be considered non-marital, if any.

{¶ 20}    Accordingly, the First and Second Assignments of Error are overruled.

### III.    The Trial Court Did Not Err in Ordering the Husband to

### Reimburse the Wife for Monies Paid from Marital Funds Toward

### Expenses Incurred on his Separate, Inherited Property

{¶ 21}    Mr. Hadder's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT WAS UNJUSTLY ENRICHED UPON APPELLANT BEING REIMBURSED FOR EXPENSES HE PAID TOWARDS INHERITED REAL ESTATE.

{¶ 22}    Mr. Hadder contends that the trial court erred in ordering him to pay Ms. Hadder the sum of $5,406 as her one-half share of marital monies he paid toward expenses associated with his mother's estate.

{¶ 23}    Mr. Hadder's mother died in 2007.  He and his brother inherited a home located in Vandalia, Ohio.  It is not disputed that Mr. Hadder used marital funds to pay various expenses associated with that home.  The record supports a finding that the total expended by Mr. Hadder from marital funds was $10,813.23.  It is undisputed that Mr. Hadder was reimbursed for those expenses.

{¶ 24}    The trial court found it unclear where the reimbursement funds went. Mr. Hadder contends this was error because he established that the reimbursements were returned to marital accounts that were ultimately evenly divided between the parties.

{¶ 25}    The record supports a finding that Mr. Hadder did trace the monies he received as reimbursements into one bank account he admitted was held solely in his name,

as well as into a bank account jointly held with his brother. However, there is no evidence as to what was done with those monies thereafter. We find no evidence that the monies were, as Mr. Hadder claims, returned to a joint marital account, or that any of the money was otherwise given to Ms. Hadder.

{¶ 26}    Based upon this record, the trial court did not err in ordering Mr. Hadder to repay Ms. Hadder one-half of those monies. Accordingly, the Third Assignment of Error is overruled.

**IV.   The Trial Court Did Not Abuse its Discretion in Ordering the Husband to Pay a Larger Percentage of his Medical Bills, in View of his Greater Income**

{¶ 27}    The Fourth Assignment of Error raised by Mr. Hadder provides:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ORDERING THE PARTIES TO AN [SIC] UNEQUAL SPLIT OF MEDICAL BILLS INCURRED DURING THE MARRIAGE.

{¶ 28}    Mr. Hadder contends that the trial court should have ordered Ms. Hadder to pay 50% of his medical bills incurred during the marriage. In support, he contends that the trial court based its decision to order Ms. Hadder to pay 35% of those medical bills on erroneous income figures for the parties. Specifically, he contends that the trial court erred in finding that his income was double that of Ms. Hadder's income, and claims that both parties had approximately equal income at the time of the hearing.

{¶ 29}    We note that the trial court used income figures taken from Mr. Hadder's financial disclosure form filed in 2011 in determining the amount of the parties' income.

Although there was evidence that Ms. Hadder's income would increase upon division of the retirement accounts, and that both parties had lost some 2012 annuity benefits, there was no evidence to indicate that Mr. Hadder's income would not remain larger than that of Ms. Hadder. Thus, we find no abuse of discretion with regard to the trial court's decision to order Ms. Hadder to pay less than fifty percent of the medical bills.

{¶ 30} The Fourth Assignment of Error is overruled.

## V. The Trial Court Did Not Err in Ordering the Husband to Reimburse the Wife for a Portion of his Attorneys Fees that he Paid with Marital Funds

{¶ 31} Mr. Hadder's Fifth Assignment of Error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ORDERING APPELLANT TO REIMBURSE APPELLEE FOR ATTORNEY FEES.

{¶ 32} Mr. Hadder contends that the trial court erred by requiring him to repay Ms. Hadder one-half of the marital funds he used to pay his attorney during the divorce. In support, he contends that he paid a portion of his fees from his portion of the proceeds from the sale of the marital residence, which were not marital funds.

{¶ 33} At trial, Mr. Hadder admitted that he paid some of his attorney fees from marital funds. However, he also testified that he reimbursed the marital account from which he made the payments with his portion of the proceeds from the sale of the marital residence. He testified that he had given his brother the monies from the sale for safekeeping and that he did not know where his brother kept the monies. He testified that when he needed to make

payments to his attorney, he would request the money from his brother, which he would then deposit into the marital checking account.

{¶ 34}    The trial court found that Mr. Hadder had failed to prove that he utilized his non-marital monies to pay his attorney or that he returned any of the marital monies to the marital account.   We find no abuse of discretion in that regard.   Given that the record supports a finding that Mr. Hadder utilized over $15,000 in marital funds to pay his attorney, we find no abuse of discretion in the trial court's order requiring him to reimbursement Ms. Hadder the sum of $4,606

{¶ 35}    The Fifth Assignment of Error is overruled.

## VI.   The Trial Court Did Not Err in Finding No

### Financial Misconduct on the Wife's Part

{¶ 36}    The Sixth Assignment of Error is as follows:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO APPLY THE CORRECT STANDARD TO ESTABLISH FINANCIAL MISCONDUCT.       APPELLANT    DID    ESTABLISH    FINANCIAL MISCONDUCT BY APPELLEE UPON THE CORRECT STANDARD BEING APPLIED.

{¶ 37}    Mr. Hadder contends that the trial court should have held Ms. Hadder responsible for financial misconduct committed during the pendency of the case.

{¶ 38}    R.C. 3105.171(E)(4) states that:

If a spouse has engaged in financial misconduct, including, but not limited

to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

**{¶ 39}** "The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing (i.e., wrongful scienter). 'Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets.' Financial misconduct involves some element of profit or interference with another's property rights." (Citations omitted.) *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 18.

**{¶ 40}** Mr. Hadder claims that Ms. Hadder "intentionally caused her attorney to file specific restraining orders on April 4, 2011, which ultimately defeated Appellant's monetary income from one of the Jackson National Life annuities for one full year, a value of $16,771.08." Appellant's brief, p. 28. He further argues that Ms. Hadder "intentionally wanted to leave Appellant without this income, as she was mad that he was spending it elsewhere, such as at restaurant/bars." *Id.*, p. 30.

**{¶ 41}** According to the testimony of Mr. Hadder's financial advisor, he planned to make an election that would permit Mr. Hadder to receive monthly payments of almost $17,000 per year from the annuity account. He testified that the window for making this election was September 12 to October 12, 2012. He further testified that they were unable to make the election because of the restraining order. Thus, he testified that Mr. Hadder lost the sum of $17,000 that cannot be recovered. Finally, he testified that Mr. Hadder has to make the election every year, and would be able to do so in September and October 2013.

**{¶ 42}** The record shows that Ms. Hadder filed for divorce on April 4, 2011. Along with her complaint, she filed a multi-branch motion to restrain Mr. Hadder from certain actions concerning the marital property. Of relevance hereto, the motion sought an order restraining Mr. Hadder's financial advisor from "permitting [Mr. Hadder] to remove, sell, withdraw, transfer or encumber accounts in his name, except for the automatic monthly withdrawal of $1,167.10 per month from Jackson National Life Insurance Company annuity."

**{¶ 43}** Like the trial court, we conclude that this does not amount to financial misconduct. The restraining order was sought more than a year before the election window. There is no evidence that Ms. Hadder or her attorney had any knowledge of the need to make the election. Furthermore, there is no evidence that Mr. Hadder, his financial advisor or his attorney made Ms. Hadder aware thereof. Since Ms. Hadder claims an interest in the annuity account, it seems unlikely that she would intentionally cause the loss of the monies therein. Obviously, both Mr. Hadder and his attorney were aware of the existence of the restraining order for more than a year, and could therefore have filed a motion seeking to amend, or seeking relief from, the restraining order.

**{¶ 44}** We conclude that the trial court did not err in finding no financial misconduct on Ms. Hadder's part. Therefore, the Sixth Assignment of Error is overruled.


**VII. Conclusion**

**{¶ 45}** All of Mr. Hadder's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.


Copies mailed to:

Elizabeth J. Henley
Laura L. Kendell
Brian D. Huelsman
Alexander Arestides
Hon. Denise L. Cross